**BLUE SPRINGS REORGANIZED SCHOOL DISTRICT IV, Plaintiff-Appellant,**

v.

**Helen LANDUYT, Defendant-Respondent.**

No. KCD 26571.

Missouri Court of Appeals,
Kansas City District.

Aug. 23, 1973.

James C. Morris, Walter A. Raymond, Raymond, West, Shy & Morris, Kansas City, for plaintiff-appellant.

Thomas D. Cochran, Piedimonte & Cochran, Independence, for defendant-respondent.

Before SOMERVILLE, P. J., and SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

This case was initiated by an appeal filed in the circuit court under § 168.120 (all statutory references in this opinion being to RSMo 1969, V.A.M.S.) by a tenured teacher, Helen Landuyt, to challenge the termination of her employment by the board of education of the employing school district. At issue here is whether the school district followed the procedures required by the Teachers Tenure Act, §§ 168.102 to 168.130, which became effective June 1, 1970. The circuit court held that those procedures had not been followed and therefore ordered Mrs. Landuyt's reinstatement. The school district appeals.

The key facts are as follows. On December 23, 1971, Mrs. Landuyt slapped a student, Jeffrey Hormel, thereby breaking a ring on her hand and causing a split lip and a bruised eye to the boy. This slap followed an incident which occurred December 12, 1971, in which Mrs. Landuyt paddled another pupil, Michael Brady. After the Brady episode, the school principal had instructed Mrs. Landuyt to administer no further corporal punishment.

On January 3, 1972, immediately after the Christmas holidays, Mr. Hormel came to the school to protest the slapping of his child. He met with Mr. Hanneman, the principal, and Mr. Ultican, the Assistant Superintendent, who then called Mrs. Landuyt into the meeting. Later the same day, another meeting was held between Hanneman, Ultican, Landuyt and the school superintendent, Dr. Bartow. At the conclusion of this meeting, Dr. Bartow asked Mrs. Landuyt to resign within five days, or else he would re-evaluate her as a teacher and start proceedings for the termination of her contract. Thereafter, certain further events intervened, but ultimately Mrs. Landuyt refused to resign and Dr. Bartow did commence proceedings looking to her release.

As part of the course of action predicted by him, Dr. Bartow caused a notice of charges to be prepared, and this notice was served upon Mrs. Landuyt on March 8, 1972. This notice advised Mrs. Landuyt that she had been charged with "incompetency, inefficiency or insubordination in the line of duty" in 25 itemized respects. The notice proceeded: "You are hereby warned that these matters above mentioned may contribute causes for which your contract can be terminated if the causes are not removed."

Thereafter, on March 22, 1972, a conference was held between Mrs. Landuyt and her counsel, together with Bartow, Hanneman and Ultican. The list of 25 complaints was discussed, Mrs. Landuyt said that she would correct them, and she was told that if she rectified the 25 items mentioned that would resolve the problem.

Immediately following this conference, Dr. Bartow instructed Principal Hanneman to make an evaluation of Mrs. Landuyt's conduct. Pursuant to those instructions, Hanneman attended one of Mrs. Landuyt's class sessions for a period of approximately one hour, and he also observed the time she came to her classroom in the morning and the manner in which she took her pupils to the school cafeteria. Based upon those observations, the supervisory staff proceeded to prepare formal Charges and Complaint which were served April 30, 1972. This document incorporated in toto the warning letter dated March 8, 1972, and then proceeded with an allegation that Mrs. Landuyt "has not removed the causes for which she may be terminated, but instead has continued her acts and omissions in connection with her duties and has continued to evidence her incompetency, inef-

ficiency and insubordination in the line of duty" in ten itemized manners.

Concurrently with service of the Charges and Complaint, the board also served notice upon Mrs. Landuyt that a hearing would be held on May 24, 1972. Pursuant to that notice, the hearing before the board commenced on the date specified. The school supervisory personnel testified as witnesses. Their testimony may be summarized as showing that all the original charges against Mrs. Landuyt had been cured except for the general allegation of not following school policies, and that the particulars of the complaints remaining at the end of the thirty day warning period came down to the allegations by Hanneman that she had been late by a few minutes on several mornings in getting to her classroom and that she did not maintain a straight line of pupils en route to the cafeteria. After hearing voluminous evidence, the board issued its decision on July 24, 1972, in which it ruled:

"(1) There has been proof of the incompetency, inefficiency and insubordination in the line of duty of Helen Landuyt,

"(b) The employment contract of Helen Landuyt as a fifth grade teacher and her tenure as a teacher in Reorganized School District No. 4 should be terminated * * *"

Reversing that decision made by the board, the circuit court ruled that the charges filed on April 30, 1972, were new and different from those set forth in the warning notice of March 8, 1972, and that the board had failed to give the required statutory thirty day notice or to hold the required conference as to those new allegations upon which the case had been tried. The school district's points of error on this appeal with respect to that ruling of the circuit court may be summarized as follows: (1) that the board did follow all the required statutory procedures; (2) that even if those procedures were not followed, the defect was waived by Mrs. Landuyt; and (3) that the construction placed upon the statute by the circuit court is unreasonable in that it permits a complete exoneration of a teacher if he or she merely refrains from repeating the precise offense for a thirty day period following receipt of a warning notice with respect to that specific offense.

I

The issue presented by the first of the above points requires interpretation of § 168.116, which provides in part as follows:

"1. The indefinite contract of a permanent teacher may not be terminated by the board of education until after service upon the teacher of written charges specifying with particularity the grounds alleged to exist for termination of such contract, notice of a hearing on charges and a hearing by the board of education on charges if requested by the teacher.

"2. At least thirty days before service of notice of charges of incompetency, inefficiency, or insubordination in line of duty, the teacher shall be given by the school board or the superintendent of schools warning in writing, stating specifically the causes which, if not removed, may result in charges. Thereafter, both the superintendent, or his designated representative, and the teacher shall meet and confer in an effort to resolve the matter.

"3. Notice of a hearing upon charges, together with a copy of charges, shall be served on the permanent teacher at least twenty days prior to the date of the hearing. The notice and copy of the charges may be served upon the teacher by certified mail with personal delivery addressed to him at his last known address. If the teacher or his agent does not within ten days after receipt of the notice request a hearing on the charges, the board of education may by a majority vote, order the contract of the teacher terminated. If a hearing is requested by either the teacher or the board of educa-

tion, it shall take place not less than twenty nor more than thirty days after notice of a hearing has been furnished the permanent teacher."

Recognizing that Mrs. Landuyt was a "permanent teacher" (as defined in § 168.-104 [4]) and since the board was proceeding on charges of "incompetency, inefficiency or insubordination in line of duty," the board did follow the requirement of § 168.116, subd. 2 with respect to its original 25 charges, by serving upon Mrs. Landuyt a thirty day warning notice. Furthermore, when it issued the final Charges and Complaint on April 30, 1972, it recognized the necessity of alleging that the causes set forth in the warning notice has not been cured, and the Charges and Complaint alleged that Mrs. Landuyt "has not removed" those causes, but to the contrary "has continued her acts and omissions".

The trouble is that the Charges and Complaint does not allege and the facts do not show that the acts of "continuation" are the same or even closely akin to the original offenses charged against Mrs. Landuyt. The real gravamen of the complaint against Mrs. Landuyt at the time of the filing of the warning notice was the Jeffrey Hormel slapping incident, which had precipitated the whole termination procedure starting with the warning notice. During the thirty days succeeding the filing of that warning notice, concededly no further slapping or corporal punishment of any kind occurred. Instead, the gravamen of the complaint by the Superintendent by the time he filed the Charges and Complaint had become that Mrs. Landuyt was late for a few minutes on a few mornings in reporting to her classroom and that she failed to maintain a straight line of students going to the cafeteria. Comparing the original charges to the charges which were being pressed on April 30, 1972, the trial court concluded that the April charges were "new and different", requiring a new compliance with the procedures specified in § 168.116–2.

The school district vehemently disagrees with that conclusion, arguing that the ten charges added on April 30, 1972 were "mere restatement in more specific form" of the original charges, particularly item 4 in the warning notice which charged Mrs. Landuyt with "not following school policy." The other two of the original charges which the school board claims were so "restated" are item 3 charging "poor teacher-pupil relationship because of discipline" and item 6 charging "poor influence on pupil attitude".

The fundamental fallacy of this argument by the school district is that it ignores the statutory requirements that the alleged offenses by the teacher must be set forth in written charges "specifying with particularity" the grounds alleged to exist for termination, and that the warning notice must state "specifically" the causes which, if not removed, may result in termination. Among the 25 charges contained in the warning notice of March 8, 1972, there are many which do meet these statutory requirements of "specifying with particularity". Most prominent among these are items 1, 18, 19 and 20, all referring in slightly different verbiage to the Hormel slapping incident. However, no similar approval can be given to the generalized charges contained in items 3, 4 and 6 upon which the school district now attempts to rely. Even if it were not for the extremely strong language of § 168.116, calling for "specifying with particularity," general principles of law do not tolerate the maintenance of proceedings to terminate a teacher upon such noninformative allegations. County Board of Education v. Oliver, 270 Ala. 107, 116 So.2d 566 (1959); Osborne v. Bullitt County Board of Education, 415 S.W.2d 607 (Ky.App.1967).

■ It is important to point out that the purpose of § 168.116, subd. 2 is to give the teacher an opportunity to know exactly what the complaints against her are and to afford her a chance to cure the situation.

This statute is new in Missouri, but it merely follows the pattern of similar Teacher Tenure Statutes in other states which have this beneficent purpose as their avowed object. Miller v. Bd. of Education, 51 Ill.App.2d 20, 200 N.E.2d 838, l. c. 842 (1964); Werner v. Comm. Unit School Dist., 40 Ill.App.2d 491, 190 N.E.2d 184 (1963); Wells v. Bd. of Education, 85 Ill.App.2d 312, 230 N.E.2d 6 (1967); New Mexico State Bd. of Education, 83 N.M. 106; 488 P.2d 1210 (1971); Fresno City High School Dist. v. De Caristo, 33 Cal. App.2d 666, 92 P.2d 668 (Cal.App.1939); Fresno City High Sch. Dist. v. Dillon, 34 Cal.App.2d 636, 94 P.2d 86 (Cal.App.1939); 78 C.J.S. Schools and School Districts § 204, p. 1092. The philosophy of these cases is summarized in the Miller decision, first above cited, where it is held:

"As a safeguard against the arbitrary exercise of the board's power of dismissal the Tenure Act provides, in Section 24–3, that if the charges assigned for dismissal are 'on account of causes that may be deemed to be remediable' the board, before serving notice of such charges, must give the teacher a written warning notice, stating with particularity the causes which, if not removed, may result in the bringing of dismissal charges. *It is also clear that the warning notice must be tendered at such a time as will allow the teacher to whom it is directed a reasonable time in which to correct the alleged deficiencies.*" (emphasis added)

■ In the present case the warning notice did not give Mrs. Landuyt a fair opportunity to remedy the deficiencies as to which she was finally charged and found guilty. The matters of not being in her classroom precisely at 7:30 in the morning and of not keeping straight lines en route to the cafeteria were not so much as even mentioned in the warning notice of March 8, 1972. During the ensuing thirty day period which she was supposed to have in order to remedy complaints, she visited Prin-

cipal Hanneman and asked him if he had any comment upon her current performance and whether there was anything he could suggest that she should try to improve. To that inquiry, Hanneman said nothing at all about the two complaints upon which he laid his emphasis at the final hearing. In this respect, Hanneman testified as follows:

"Q Do you remember, Mr. Hanneman, on March 30, which would be about a week after or about three days after you visited in her room, of Mrs. Landuyt asking you if you had any suggestions to her or any complaints about the way that she was working during this probationary period, and that indicating that nothing that you could mention at that time, or something to that effect?

I'm not trying to put words in your mouth.

"A Yes.

"Q And at that stage of the game, you didn't give her any suggestions or list any complaint at that time?

"A No, I did not."

This does not reflect a good faith effort to give the teacher a chance to remedy defects, as contemplated by the statute. Rather it smacks of deliberate concealment and entrapment.

It must also be emphasized that when the supervisory staff finally got around to making the supplemental charges on April 30, 1972, they concurrently therewith suspended Mrs. Landuyt from any further teaching. That suspension had the effect of effectively blocking her from any opportunity whatsoever to correct or remedy the additional deficiencies mentioned for the first time in the formal Charges and Complaint.

■ The trial court was quite correct in concluding that the complaints upon which Mrs. Landuyt was found guilty were "new and different" from those alleged in the

warning notice of March 8, 1972. The three generalized charges therein upon which the school district now relies as broad enough to encompass the final complaints are, legally speaking, pure ciphers. A teacher may not be tried and discharged on a generalized charge of "violating school policies" any more than a criminal defendant can be indicted on a general charge of "violating the criminal code." The only legally effective charges contained in the March 8 warning notice were the specific ones, and the specific charges in the ultimate Charges and Complaint must be compared to the specific charges in the warning notice in order to ascertain whether they are really so closely akin as to constitute a continuation of the alleged original offenses. That comparison in this case compels the conclusion that the ultimate charges were in truth new and different, just as the trial court held.

## II

The school district claims that Mrs. Landuyt's acquiescence in going to trial on the charges against her on May 24, 1972, less than thirty days after the filing of the formal Charges and Complaint against her, constituted a waiver by her of the thirty day notice required by § 168.116, subd. 2. In making this argument, the school district misconceives the purpose of this thirty day notice provision and treats it as if it were intended to provide no more than a minimum period within which the teacher can prepare for the formal hearing. That underlying, although unstated assumption by the school district is incorrect.

■ As heretofore stated in section I of this opinion, the true purpose of the thirty day warning period under § 168.116, subd. 2 is to give the teacher an opportunity to cure and remove the causes of complaint against her. The same statute in the next succeeding paragraph 3 provides for another different notice to serve the purpose of giving time within which to prepare for a hearing. This latter paragraph provides

that after the thirty day warning period has fully expired, then the board of education, if it desires to proceed against the teacher, must file formal charges and notice of a hearing "at least twenty days prior to the date of the hearing". It could hardly be questioned that this twenty day period last mentioned could be shortened by agreement of the parties or waiver by the teacher. That is not the question presented, however, since the hearing on this case was noticed to be held and was held more than twenty days after the filing of formal charges. The acquiescence by Mrs. Landuyt in the holding of the hearing 24 days after the filing of formal charges therefore cannot be considered in any way a waiver by her with respect to the entirely different matter of a proper thirty day warning notice which had to be given before formal charges could be filed.

Moreover, contrary to the contention made by the school district in its brief, Mrs. Landuyt's counsel did specifically raise before the board the precise objection now under discussion. The objection and argument made before the board by her counsel which contradicts any concept of waiver, was as follows:

"The Teachers Tenure Act states—Mr. Morris reads portions of it to you—and it says that if a tenure teacher, which Mrs. Landuyt is, is trying to be removed for the purpose of incompetency, insubordination, or inefficiency, which is the charge against her here, the requirement of statute says she must be told, given the reasons, stating specifically—stating specifically the causes, which if not removed, may result in charges being filed against her: specific charges. * * *

"Now, I have borne down very heavily on the fact that she was specifically charged, because then the law says that something else happens, after she is given these 25 things, she is then given the opportunity to rectify, to work together with the Superintendent of Schools, to

rectify the problem of which she was specifically charged—these 25 things.

"I submit to you that my client didn't have a snowball's chance on a hot July day to rectify the mistakes which she made, and I will read you some testimony here in a moment to justify that which I have just said.

"But after the thirty days, they then filed, under the Teachers Act—they came back to you and asked that you suspend Mrs. Landuyt, and at that time they filed 10 more specific charges, and these 10 specific charges are different than the first 25."

Still further, contrary to the school district's contention in its brief, Mrs. Landuyt did carry forward this same objection in her notice of appeal to the circuit court. Thus paragraph 3 of the notice of appeal alleges that the board of education erred in proceeding on specific charges in paragraph 6 of the final complaint which were "entirely different than the specific charges under paragraph four (4) in which she had been given her statutory notice to remove [sic]." Likewise, paragraph 4 of the notice of appeal alleges that the board erred in that "the Defendant did not receive in writing from either the school board or the superintendent of schools a warning stating specifically the causes which, if not removed, may result in charges as to the charges contained in paragraph six (6) in [sic] which the Defendant was eventually charged with under the charges and complaint."

In no view can it be said that Mrs. Landuyt waived a proper warning notice as required by the statute.

### III

The school district's final complaint is that the construction by the circuit court of § 168.116 is unreasonable in that this means that by refraining during the thirty day statutory period "from repetition of the identical wrongs listed in the 25 charges defendant thereby won complete exoneration for all time as to such charges as a matter of law, regardless of her continuing insubordination, incompetence and inefficiency in other matters during the probationary period and thereafter". The school district attempts to develop this point by arguing that under the trial court's construction "if defendant refrained from repeating the identical wrongs specified in the charge during the 30 day probationary period defendant was completely exonerated and was free to immediately start a new series of different violations of her duties even during the probationary period and thereafter, which could be reached only by again starting similar proceedings and so on, over and over, until the entire repertoire of wrongs had been exhausted". Any fear of such a result is unwarranted.

In making this argument, the school district leaves out of account that incompetency, inefficiency and insubordination (the charges upon which it proceeded in this case) are not the only grounds upon which the contract of a permanent teacher may be terminated under the Teacher Tenure Act. § 168.114 provides six grounds for termination, of which "incompetency, inefficiency or insubordination in line of duty" is only item No. 3. Another cause provided for termination appears in the very next succeeding subparagraph (4) which provides for termination in any case of "willful or persistent violation of, or failure to obey the school.laws of the state or the published regulations of the board of education" of the employing school district.

▆ The importance of distinguishing between these two different grounds for discharge is that a warning notice is required under § 168.116 only when the board proposes to terminate a teacher's contract for incompetence, inefficiency or insubordination in line of duty. No warning notice whatsoever is required for termination under any of the other five grounds for discharge set forth in § 168.114. Therefore,

under circumstances such as hypothesized by the school district in its argument now under consideration, the clear solution to the problem would be for the school district to see to it that all of its important rules are contained in published regulations and then to proceed against the teacher guilty of the hypothesized conduct for willful or persistent violation of those rules under subsection (4) of § 168.114, subd. 1.

■ It must be emphasized that here the school district at no time charged nor has it sought to make out a case of "willful or persistent violation" under § 168.114, subd. 1(4). The election not to proceed under that provision may have been dictated by the board's recognition that the rules alleged to have been violated by Mrs. Landuyt had never been given the status of "published regulations of the board of education." As a matter of fact, the record in this case reflects that the rules which Mrs. Landuyt is charged with having violated had been issued either orally or at best by written memorandum of the school principal; and this falls short of being "published regulations of the board of education." We need not decide for the purposes of this case whether a finding of "willful or persistent violation" would command substantial support in the evidence here that Mrs. Landuyt was late for a few minutes on a few mornings in getting to her classroom from the teacher's lounge, and in failing to keep straight lines of pupils on the way to the cafeteria, when the evidence shows that the other teachers did the same thing, and especially when Mrs. Landuyt was given no warning concerning these petty violations of these minor rules by her.

The school district in support of its present argument cites numerous cases on the subject of condonation in divorce cases. No condonation issue is presented in the instant case, and the attempted analogy to condonation in divorce cases is inapposite.

In view of the disposition of the issues made by this opinion, it becomes unnecessary to discuss other issues raised by Mrs. Landuyt.

The judgment is affirmed.

All concur.