**Alphonzo N. LOPEZ, Plaintiff-Appellant,**

**v.**

**K. E. VANCE et al., Defendants-Respondents.**

**No. 35127.**

Missouri Court of Appeals,
St. Louis District,
Division 1.

March 12, 1974.

Motion for Rehearing or Transfer to Court
En Banc or to Supreme Court Denied April 8, 1974.

Application to Transfer Denied
June 10, 1974.

Buerkle, Buerkle & Lowes, Jackson, for plaintiff-appellant.

Limbaugh, Limbaugh & Russell, Cape Girardeau, Dennis C. Brewer, Perryville, for defendants-respondents.

SIMEONE, Judge.

This case involves the construction and interpretation of the Missouri Teacher Tenure Act, §§ 168.102–168.130, RSMo 1969, V.A.M.S., adopted by the General Assembly, effective July 1, 1970.

Plaintiff-appellant, Alphonzo N. Lopez, appeals from a decree in favor of the defendants-respondents, entered on January 11, 1973, by the circuit court of Perry County decreeing that "Plaintiff is not entitled to the relief prayed for in Count I of his petition" and that "Plaintiff is not a person entitled to the benefits of the Missouri Teacher Tenure Act. . . ."

Plaintiff, Mr. Lopez, is an electronics teacher in Perryville School District No. 32 (hereinafter school district). Mr. Raymond Pensel is the senior high school principal and Mr. K. E. Vance is the superintendent of the school district.

Mr. Lopez instituted this proceeding by filing a petition in two counts. Count I alleged that the General Assembly adopted the Teacher Tenure Act, effective July 1, 1970, that plaintiff was a duly licensed instructor, that he was employed by and completed his "5th year at the close of the school year in May of 1971, and thereby became a 'permanent teacher' within the meaning of the Missouri Teacher Tenure Act, and, therefore, by law entitled to an indefinite contract." He further alleged that the district did not tender him an indefinite contract for the year 1971–1972 and has not paid him all the normally scheduled wages that he was entitled to; that he is ready, willing and able to offer his services to the district, that he has been notified that he is not eligible for retirement credit for the year 1971–1972. He prayed for a mandatory injunction directing the officials of the district to tender him a contract which complies with the Teacher Tenure Act for 1972–1973 and that the defendants be enjoined from interfering with the performance of a contract and to order the district to take the necessary steps to correct the records with the Teachers' Retirement System, and he sought additional compensation for 1971–1972.

Count II alleged a conspiracy on the part of the defendants to make the performance of his duties difficult and sought damages therefor.

The parties agreed that only Count I would be the subject of the hearing and any appeal, and that the court should make Count I an appealable order under Rule 81.06, V.A.M.R.

Evidence was taken. Mr. Lopez testified and his attorney introduced excerpts from the depositions of Mr. Pensel and Mr. Vance.

The Perryville school district school day begins at 8:00 a. m. and ends slightly after 3:00 p. m. There are six hours in the school day, but the school day is divided into seven periods of fifty-five minutes each. A teacher is required to serve a total of six periods either in the classroom or in some form of supervision either in the lunchroom, or in the gymnasium or study hall. During the five years from 1966–1967 academic year through the 1970–1971 academic year, Mr. Lopez was assigned classroom instruction, and previous to the academic year 1971–1972 he had an assignment of supervising a lunchroom as one of his regular periods.

The attorneys for the parties at the hearing on January 11, 1973 stipulated to certain facts: (1) Mr. Lopez was hired to teach electronics in the Vocational and Technical Education Program; he taught six hours in the years 1966–1967, 1967–1968, 1968–1969, 1969–1970 and 1970–1971, a total of five years;

(2) For the academic year 1971–1972, Mr. Lopez taught five periods rather than six and was paid on a 5/6 basis of his salary of $8,000.00. (The contract the school district and Mr. Lopez entered into for the 1971–1972 school year was dated March 10, 1971);

(3) For the school year 1972–1973, Mr. Lopez was initially offered a contract to teach two hours at 2/6 pay, but prior to the school year the "contract" was enlarged to include teaching five hours at 5/6 pay. During the school year 1972–1973, he taught five hours (periods) and received 5/6 pay.[1]

(4) That Mr. Lopez, during all the period had a valid teacher's certificate in the electronics field;

(5) That Count I of the petition presents a legal issue with respect to the Teacher Tenure Act;

(6) That when Mr. Lopez began teaching five hours (periods) instead of six the State Retirement Board was notified of the fact, and that a notice was sent to him from the retirement board to the effect that he was not a full time teacher and that he would not participate in the same retirement program as teachers who were teaching six hours; and

(7) The salary paid to Mr. Lopez during the '71–'72 year was $6,666.65. 5/6 of $8,000.00 and the salary for the '72–'73 year was 5/6 of the $8,100.00.

Mr. Lopez testified that he taught in the Perryville School System as a vocational instructor in electronics since 1966. Since 1966, until the 1971–72 year, he taught a total of six periods—five hours of class instruction and one of supervision. During the first five years he was assigned as supervisor at the cafeteria. In the school year 1971–1972, however, he was not assigned any supervisory duties to make up the sixth period, but did teach five hours of classroom instruction—electronics I, one hour twice a day and electronics II, a three period class. He also had a "conference" period—a preparatory period which "we do not get paid for."

For the 1971–1972 year he was tendered a contract for 5/6 of his salary, which was signed by him. He testified that he was ready, willing and able and available to take all the "chores" the school would as-

---

1. The parties agreed that his teaching at 5/6 pay was without prejudice to his rights in the litigation which Mr. Lopez commenced on May 26, 1972.

sign, and ready, willing and able to teach six periods. He testified that there were several teachers who supervised study halls during the six periods, which counts toward the six periods.

During the school year 1971–1972, Mr. Lopez was free to leave the school "a little after 2:00" as opposed to 3:00.

Portions of the depositions of the principal, Mr. Pensel, and the superintendent, Mr. Vance, were read as part of the plaintiff's case. The deposition of Mr. Pensel indicated that seven periods of fifty-five minutes is a school day, and that instructors teach six periods, which include some supervisory duties during lunch periods in the gymnasium or in the lunchroom, as well as study hall.

He admitted knowing of some school systems which pay teachers their full salary who only put in five hours, but in this system teachers "teach" six periods which may include supervision. His answers in his deposition indicated that the reason that Mr. Lopez was paid ⅚ of his salary was because there was an insufficient number of pupils for his courses. Mr. Pensel stated that Lopez "did an unsatisfactory job" of supervising the lunchroom, hence "he doesn't have lunch rooms anymore."

Much was made of the fact in both Mr. Pensel's and Mr. Vance's depositions that the board submitted to the voters an additional one dollar levy for four years to be used for a matching fund basis for federal funds, which would be used for various types of vocational education including electronics, this presumably to refute the reason for the decrease in salary that there was an insufficient number of pupils to take electronics.

Portions of Mr. Vance's deposition were read by the appellant. Mr. Vance stated that at contract time, Mr. Pensel indicated "there was some question whether or not we would have enough students for electronics II." The testimony that was read indicated that the board did ask for an additional one dollar levy for four years to be used for vocational purposes.

After reading the portions of the depositions, plaintiff rested. At that time, the attorney for the defendants moved for judgment on the ground that the plaintiff failed to show sufficient facts to entitle the plaintiff to relief on Count I. Then the attorney for Mr. Lopez requested findings of fact and conclusions of law. But the court stated, "That comes too late. . . . [T]he rules are very plain that if you want findings of fact and conclusions of law, they must be asked for in the beginning." The court then stated that upon "re-reading of subparagraph 4 of § 168.104 the Court will find in favor of the Defendants and against the Plaintiff."

Thereafter, the court entered its decree: (1) ordering Count I of the plaintiff's petition severed and that its decree on Count I be "deemed a final judgment for purposes of appeal under Supreme Court Rule 81.-06," and (2) having heard the evidence decreed "for the Defendants and against the Plaintiff, at the close of the Plaintiff's evidence upon motion of Defendants." The court ordered and decreed that plaintiff is not entitled to the relief prayed for in Count I, and that the "Plaintiff is not a person entitled to the benefits of the Missouri Teacher Tenure Act as provided in Section 168.102 et seq. RSMo.1969."

In due time Mr. Lopez appealed.

On appeal, Mr. Lopez makes two points: (1) the court erred in failing to honor his request for findings of fact and conclusions of law pursuant to Rule 73.01(b) and (2) the court erred in finding that the plaintiff was not a "tenured" or permanent teacher entitled to the benefits of the Teacher Tenure Act, and that plaintiff was not employed after his fifth year of teaching as a "full-time" teacher as contemplated by § 168.104(4). His position as indicated to the trial court is that having been employed for five years as a full time teacher and thereafter having made him-

self available for full-time service in the sixth year, and allegedly being employed as a "full-time" teacher he became a permanent teacher entitled to an indefinite contract at full salary. He contends that he was arbitrarily not assigned an additional sixth supervisory period for the 1971–1972 year and that he is entitled to be treated as a full-time teacher in the sixth year since he was available at all times to perform the services required.

He further argues that the failure to assign the plaintiff a supervisory hour was an arbitrary one and an attempt to deny him tenure.

The respondents contend on the other hand that the trial court properly found Mr. Lopez was not a tenured teacher and that he was not employed as a full-time teacher after his fifth year.

The principal issue to be decided in our opinion is whether, after a teacher serves a period of five years as a full-time teacher, and in his sixth year makes himself available for full-time teaching duties, and teaches the same number of classroom hours as he has in the past but is not assigned supervisory non-teaching duties by the principal or the district to make up six periods in the day, may be paid or tendered a contract which is less than a full salary for the academic year. Or, as appellant states the issue, it is "whether or not after the original five year probationary period he

was thereafter employed as a full-time teacher."

■ This is a court tried case. We must review the facts and evidence and make our own independent determination, but in doing so, we give due deference to the opportunity of the trial court to judge the credibility of the witnesses and we are required not to set aside the judgment unless clearly erroneous. Rule 73.01(d).

■ Our General Assembly in 1969 recognizing the benefits of teacher tenure[2] passed Senate Committee Substitute for House Bill 120, effective July 1, 1970. We believe the purpose of our statute, as well as teacher tenure acts, was to attain stability, certainty and permanence of employment on the part of those who have shown by educational attainment and by a probationary period their fitness for the important profession of teaching. "The history behind the act justifies the view that the vicissitudes to which teachers had in the past been subjected were to be done away with or at least minimized. It was enacted for the *benefit and advantage of the school system* by providing such machinery as would tend to minimize the part that malice, political or partisan trends, or caprice might play. It established *merit* as the essential basis for the *right* of permanent employment." McSherry, *supra,* 277 N.W. at 544. See also Blue Springs Reorganized School Dist. IV v. Landuyt, 499 S.W.2d 33, 37 (Mo.App.1973).

2. Tenure has various meanings. "Tenure in its broad sense means the duration of employment. . . . [T]he word tenure has developed a technical meaning in school law which refers to indefinite or permanent employment from year to year under certain conditions. Tenure in this technical sense is provided by statute; there is no common law involved. The tenure status of teachers therefore depends upon the provisions of the particular tenure law under which they are employed." Remmlein, School Law 25 (2nd ed. 1962) ; "Tenure is a means to certain ends; specifically: (1) Freedom of teaching and research . . . and (2) a sufficient degree of economic security to make the profession attractive to men and women of ability. Free-

dom and economic security, hence, tenure are indispensable to the success of an institution . . ." 1940 Statement of Principles on Academic Freedom and Tenure, A.A.U.P.; "Tenure is a job security device. It has been defined as assurance to an experienced faculty member that he may expect to continue in his academic position unless adequate cause for dismissal is shown in a fair hearing following established procedures of due process. Tenure is granted after a probationary period of anywhere from two to seven years." Comment, 38 Mo.L.Rev. 279 (1973) ; See the history of teacher tenure laws in McSherry v. City of St. Paul, 202 Minn. 102, 277 N.W. 541, 543–544 (1938).

§ 168.104(4) of the Teacher Tenure Act defines a permanent teacher as "any teacher who has been employed . . . in the same school district for five successive years and who has continued or who thereafter continues to be employed as a full-time teacher by the school district. . . ." Subsection (5) defines a "probationary teacher" as "any teacher as herein defined who has been employed full time in the same school district for five successive years or less."

§ 168.106 provides that "The contract between a school district and a permanent teacher shall be known as an indefinite contract and shall continue in effect for an indefinite period, subject only to: [certain specified reasons.]" § 168.114 provides that "1. An indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for one or more of the following causes: . . ."

■ Under our statutes the critical point in time at which a teacher achieves a permanent teacher status is reemployment for or failure to notify the teacher of his reemployment for the sixth successive year by the same school district. He does not achieve the status of a permanent teacher unless the statutory conditions are fulfilled, i. e. he is a full-time teacher for five successive years and "thereafter continues to be employed as a full-time teacher by the school district."

Unless, therefore, Mr. Lopez was a full-time teacher for five consecutive years prior to the academic school year 1971–1972, and was reemployed on a full-time status for the school year 1971–1972, he cannot achieve the status of a permanent teacher and thus be entitled to tenure.

The phrase "full-time" is in its nature somewhat ambiguous. But the evidence on the issue of full-time in the Perryville School District is impliedly, if not expressly clear. The class day consisted of six hours divided into seven periods of fifty-five minutes. The instructors "teach" a total of six periods which includes such non-classroom teaching as supervisory duties. Mr. Lopez for at least some time prior to the 1971–1972 academic year was assigned as supervisor at the cafeteria for his sixth period. But for the 1971–1972 year this assignment was not given him, and whether due to a lack of students in his classes or due to the non-assignment of supervisor at the cafeteria, he "taught" five, rather than six periods during the school day, and was offered a ⅚ contract for 1971–1972 and ⅚ pay for 1972–1973 The conference period was not an assigned teaching duty and teachers did not get paid for this period.

■ The simple fact is, in this case, that Mr. Lopez was not a "full-time" teacher in his sixth or seventh year, even though he taught the same number of hours of classroom instruction. Even though he has indicated his willingness and ability to serve for the sixth period in some supervisory capacity, either in the lunchroom, gymnasium or study hall, and even though there may not be the need for particular expertise or training, he cannot unilaterally achieve a permanent teacher status and thus tenure by indicating his ability, readiness and willingness to so serve. Tenure is achieved not by the unilateral willingness on the part of the teacher but by the action of the school district. The matter of whether to grant or withhold tenure must, of necessity, be that of the district rather than the willingness and availability of the teacher. Mr. Lopez acknowledged that he left school and was free to leave at 2:00 p. m. as opposed to being out at 3:00 p. m. during 1971–1972 and during 1972–1973 he left at approximately 1:15 or 1:20 p. m.

Much was made of the fact that an election was held to assess an additional $1.00 per hundred dollar assessed valuation tax levy in order to seek federal funding for vocational training in the community, while, at the same time contending that there was an insufficient number of pupils

to take electronics. But, we believe as did the trial court, this is "mighty far afield" and is irrelevant to the issues presented.

■ Under the facts presented by this record we cannot, as did the trial court, conclude that Mr. Lopez is entitled to the benefits of the Teacher Tenure Act as provided in § 168.102 et seq., nor can we conclude that he is entitled to the relief prayed for in Count I.

Appellant relies on certain decisions from other states which we believe are inapposite and do not dispose of the issues presented by this record.

Appellant contends that we should reverse and remand because the trial court failed to honor the plaintiff's request for findings of fact and conclusions of law pursuant to Rule 73.01(b).

Rule 73.01(b) provides in part: " . . . If any party shall so request *before final submission of the case,* the court shall dictate to the court reporter, or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded; and may, or if specifically requested by counsel, shall, include its findings on any of the principal controverted fact issues. . . . " (Emphasis added.)

■ The rule contemplates that a request may be made before final submission and not at the beginning of the hearing. The submission is final when the evidence and arguments are finished and the court takes the case, whether it is taken for immediate decision or merely under advisement preliminary to the rendition of a decision. McIntosh v. White, 447 S.W.2d 75, 77–78 (Mo.App.1969). A request made immediately after the close of the evidence and before any indication whether counsel desired to present or waive oral arguments and prior to any statement by the trial court, is made before final submission of the case. State ex rel. State Highway Commission v. Carlton, 453 S.W.2d 642, 652 (Mo.App.1970).

■ However, it does not follow that the cause should be remanded on that account for we are instructed by Rule 84.-13(b) that "[n]o appellate court shall reverse any judgment, unless it finds that error was committed by the trial court against the appellant, materially affecting the merits of the action."

As the parties stipulated and as the appellant continually pointed out, the determination of Count I involves a legal question. In the circumstances here, it may not fairly be said that the trial court's failure to honor the request of the plaintiff materially affected the merits of the action or interfered with our review of the legal issues. State ex rel. State Highway Commission v. Carlton, *supra* at 652.

We do not in any sense minimize the importance or validity of teacher tenure. Academic freedom and tenure are essentials if the teacher is to accomplish his or her objectives. The General Assembly in its wisdom adopted rules and regulations to protect the teacher and to benefit the school system by adopting the Teacher Tenure Act. And we are bound by the legislative deliberations and enactments of those representatives of the people. Under the facts of this record, as to Count I of the petition, Mr. Lopez did not legally attain the status of a permanent teacher and the trial court did not err.

In reaching this conclusion we find the record devoid of any evidence to establish that the defendants conspired in a manner to avoid compliance with the Teacher Tenure Act and therefore we rule only on the legal issues presented in Count I.

The decree of the trial court entered on January 11, 1973 on Count I of the petition is affirmed.

DOWD, C. J., dissents in separate opinion.

KELLY, J., concurs.

DOWD, Chief Judge (dissenting).

I respectfully dissent.

Section 168.104(4) defines permanent teacher as: "[A]ny teacher who has been employed or who is hereafter employed as a *teacher* in the same school district for five successive years and who has continued or who thereafter *continues to be employed* as a *full-time teacher* by the school district * * *" (Emphasis added). Probationary teacher is defined in Section 168.104(5) as: "[A]ny teacher * * * who has been employed full time in the same school district for five successive years or less. * * *" The intent and purpose of these two sub-sections of the teacher tenure act appear to be the establishment of a uniform system by which a school district determines whether a teacher is qualified to remain permanently within that district, and once that determination is made, the system provides security for the teacher who is retained. It is obvious that at any time during this probationary period of five years the school district may determine that the "probationary teacher" is not qualified or suitable to its needs and that the district does not desire this teacher as a "permanent teacher". The district may then terminate the relationship.

Equally obvious is the point that when this probationary period is completed, if the district chooses to continue the employment as a *full-time teacher,* that teacher becomes a "permanent teacher." I believe Mr. Lopez has become a "permanent teacher."

During his five year probationary period, Mr. Lopez taught electronics five periods per day and supervised the cafeteria for one period. Clearly he was a "probationary teacher." Section 168.104(5) provides that he must be *employed* full time

and Mr. Lopez was employed full time as a teacher and cafeteria supervisor (assuming that as per Mr. Vance this school system pays full salary for six periods per day). When Mr. Lopez was given a contract to *teach* five periods of electronics for the 1971–1972 school year, this constituted continuation as a *full-time teacher* in that the number of hours he was *teaching* remained the same as during his five year probationary period and he became a permanent teacher. This obviously meets the purpose and intent of the tenure act in that the school district was evidently satisfied with Mr. Lopez's teaching ability and wished to retain that ability.

This is not to say that a school district may not define "full-time teaching" as requiring a certain number of hours composed of both teaching and supervisory activity. But this record is devoid of anything more concrete than the assertions of administrative personnel that six periods constitute full-time for purposes of salary. The question of remuneration does not, however, determine tenure. Surely a tenured teacher may be employed part time at part time pay. But without a showing that Mr. Lopez was made aware that teaching and supervising for six periods per day was required to become tenured, or of a written rule defining full-time as it applied to tenure in this district, I believe Mr. Lopez did in fact become tenured when he continued to *teach* full-time in the school district in the sixth year.

This is not to say, however, that Mr. Lopez must continue to draw full salary during the years he teaches five periods but has no other duties the sixth. If Mr. Lopez is in fact not qualified to supervise the cafeteria or study hall or to perform a necessary function in this sixth hour, the school district may reduce his pay according to the number of hours worked. If the situation in fact deteriorates within the district as Mr. Vance and Mr. Pensel predict and the need for an electronics teacher dwindles to only two periods a day, the district should not have to pay Mr. Lopez

full salary for working two periods. The district must, of course, determine·if Mr. Lopez is qualified to fill other needs within the school such as supervisory duties in the gymnasium, lunchroom or study halls in order to accumulate his six periods for full-time employment and pay. But if the needs of the school and qualification of Mr. Lopez dictate that he only be employed to teach the five periods of electronics, he should be paid only ⅚ of full-time salary. If the district was arbitrary in not permitting Mr. Lopez to work the additional periods to get full-time pay, his remedy is under Count II.

I would reverse the judgment.