**Judy RAINWATER,
Plaintiff-Respondent,**

v.

**BOARD OF EDUCATION OF GREENVILLE R–2 SCHOOL DISTRICT OF WAYNE COUNTY, Defendant-Appellant.**

**No. 12487.**

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 21, 1982.

Motion for Rehearing or to Transfer
Denied Jan. 10, 1983.

Application to Transfer Denied
Feb. 23, 1983.

Joseph J. Russell, J. Michael Payne, Limbaugh, Limbaugh, Russell & Syler, Cape Girardeau, for defendant-appellant.

Randy P. Schuller, L. Dwayne Hackworth, Piedmont, for plaintiff-respondent.

FLANIGAN, Judge.

On June 12, 1980, the Board of Education of Greenville R–II School District voted to terminate the indefinite contract between the school district and Judy Rainwater, a "permanent teacher." [1] Mrs. Rainwater appealed to the circuit court which reversed the action of the Board and ordered her reinstatement. The Board appeals.

The circuit court, in finding that the employment of Mrs. Rainwater was wrongfully terminated, did so for these reasons: (a) "The warning letter of March 12, 1980, and the April 23, 1980, notice of hearing upon charges, did not sufficiently allege specific causes or charges as required by § 168.116," and (b) "The conclusions of law as set forth by the Board and the resulting termination of Mrs. Rainwater's indefinite teacher's contract [were] unsupported by competent and substantial evidence upon the whole record."

In *Board of Education, Mt. Vernon Schools, Etc. v. Shank*, 542 S.W.2d 779, 781–782 (Mo. banc 1976), a board of education terminated the indefinite contract of a permanent teacher. The circuit court, on appeal by the teacher, reversed the decision of the board. In reversing the judgment the

1. See § 168.104(4).     V.A.M.S.
All references to statutes are to RSMo 1978,

supreme court set forth the principles which govern review of "an administrative decision on evidentiary grounds." The court said: "[T]he court considers all evidence before the board, but its inquiry is limited. The reviewing court may only determine whether the board could reasonably have made its findings and reached its result or whether the decision was clearly contrary to the overwhelming weight of the evidence.... The court may not substitute its judgment on the evidence and may not set aside the board's decision unless it is not supported by competent and substantial evidence on the whole record. In addition, the evidence must be considered in a light most favorable to the board's decision, together with all reasonable inferences which support it.... If evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding.... Also the determination of the credibility of the witnesses is a function of the administrative tribunal."

It is the position of the Board on this appeal that the action of the Board in terminating the indefinite contract was supported by competent and substantial evidence upon the whole record and that the warning letter of March 12, 1980, and the letter of April 23, 1980, containing the written charges and the notice of a hearing thereon, were sufficient to satisfy § 168.-116, and that the circuit court erred in ruling otherwise.

It is the Board's position that the evidence adduced at the hearing before the Board was sufficient to justify the order of termination on four of the grounds for termination which are set forth in § 168.114.1, including incompetency or inefficiency in line of duty. § 168.114.1(3). This court finds that the record supports the order of termination upon the latter grounds and it is unnecessary to consider the other grounds.

Sec. 168.116 outlines the procedure which must be followed before a board of educa-tion may terminate the indefinite contract of a permanent teacher. When the "cause" for termination is "incompetency, inefficiency, or insubordination in line of duty," and if the teacher requests a hearing, § 168.116 requires that the following steps be taken:

1. The school board or the superintendent of schools shall give the teacher "warning in writing, stating specifically the causes which, if not removed, may result in charges." This step must be taken at least 30 days before service of the notice mentioned in step 3.

2. "Thereafter" the superintendent (or his designated representative) and the teacher "shall meet and confer in an effort to resolve the matter."

3. The teacher shall be served with a "notice of a hearing upon charges, together with copy of charges." These charges shall be "written charges specifying with particularity the grounds alleged to exist for termination" of the indefinite contract.

4. The hearing shall take place not less than 20 nor more than 30 days after date of service of the notice mentioned in step 3.

Mrs. Rainwater had taught in the school system for approximately 15 years prior to the termination of her contract on June 12, 1980. During the last 10 years of her employment she had taught elementary music to classes ranging from kindergarten through the sixth grade.

On March 12, 1980, the superintendent wrote a six-page letter to Mrs. Rainwater and it was promptly delivered. Among the contents of this letter were the following: Mrs. Rainwater's teaching performance has not been competent or efficient in the line of duty; the letter should be considered as her warning under § 168.-116 that charges seeking termination of her contract may be filed against her; she had not properly planned her work, either on a daily or long-term basis, in four stated particulars; her lesson plans for eight designated weeks during the school year 1979–80 were deficient; on February 20, 1980, she gave her students "busy work involving col-

oring pictures, which had no relation to music"; Mrs. Rainwater had not kept adequate and proper grade records and her grading of students was not consistent and was not always based on student performance; during the 1979–80 school year the names of some designated students were omitted from her grade report sheet; a designated student was given a grade for a semester although he attended only two days; she had given some designated students a grade of "incomplete" without explanation and such a grade was not authorized by school policy; the grades of five named students appeared improper; she had not maintained satisfactory and proper control of the students in her class; she did not maintain the attention of her students; the students were guilty of unruly conduct on nine specified dates; there were instances of improper conduct on the part of the students during her class and the names of several of the students were given; "on numerous other occasions your classroom has been noisy, with students talking, moving about and disrupting others"; she had failed to improve her work in response to previous evaluations and conferences with her principal, and the dates of four evaluations during the 1979–80 school year and the dates of five of the conferences during that school year were listed; she had consistently dismissed her class early; she had not been in her classroom at the proper time for the beginning of classes, and three specified dates were listed. The letter further stated that "these causes, if not removed, may result in charges being filed for the purpose of terminating your contract."

This court holds that the letter of March 12, 1980, meets the requirements of § 168.-116.2 with regard to the warning. *Rafael*

*v. Meramec Valley R–III Bd. of Ed.*, 569 S.W.2d 309, 313[1] (Mo.App.1978). The purpose of the warning letter is "to give the teacher an opportunity to know exactly what the complaints against her are and to afford her a chance to cure the situation." *Blue Springs Reorg. Sch. Dist. IV v. Landuyt*, 499 S.W.2d 33, 36[1] (Mo.App.1973). The instant warning letter is unlike those in such cases as *Pollard v. Bd. of Ed. Reorg. Sch. Dist., Etc.*, 533 S.W.2d 667 (Mo.App. 1976) and *Dameron v. Bd. of Ed. of Lebanon Sch. Dist. R–3*, 549 S.W.2d 671 (Mo. App.1977), which were lacking in specificity.

On March 18, 1980, superintendent Clubb and principal Denny (Mrs. Rainwater's supervisor) conferred with Mrs. Rainwater for approximately two hours. The various deficiencies set forth in the warning letter were discussed, item by item, and suggestions were made to Mrs. Rainwater concerning improvement. The three people conferred again on April 14, 1980.

On April 23, 1980, superintendent Clubb sent a four and one-half page letter to Mrs. Rainwater and it was promptly delivered. Among the contents of this letter were the following: The letter constituted formal notice, pursuant to § 168.116, that a recommendation had been made to the Board that her contract be terminated; a hearing on the matter was set for May 19, 1980, in the office of the Board; she was charged with incompetency and inefficiency in the line of duty in 16 specified areas; each of the specific examples had been set forth in the letter of March 12, 1980, to which her attention was directed; in addition to "the cited examples" Mrs. Rainwater's attention was called to "additional incidents." [2]

2. The additional incidents included: Upper grade and lower grade students were frequently doing the same work; upper grade students continuously repeated work used in lower grade classes; your lesson plans for the weeks of March 24, March 31, April 7 and April 14 were not adequate; on March 24 the class was in a state of confusion with some students singing, others not singing or not singing together; in classes after March 12, 1980, Mrs. Rainwater failed to have the attention of the class and the participation of all the students; some of the students engaged in unruly activities which Mrs. Rainwater disregarded; in class exercises she did not tell the children what they were doing wrong or give them a chance to correct it; there was an insufficiency in the recording of grades for class work; prolonged periods of confusion and unruly behavior were caused by Mrs. Rainwater playing the music too fast; Mrs. Rainwater had made students sing a solo as a disciplinary measure; she

This court holds that the letter of April 23, 1980, meets the requirements of § 168.-116.1 which requires service upon the teacher "of written charges specifying with particularity the grounds alleged to exist for termination" of the indefinite contract, together with "notice of a hearing on charges." *Rafael v. Meramec Valley R–III Bd. of Ed.*, 569 S.W.2d 309, 313–314[3, 4] (Mo.App.1978).

As stated in *Rafael*, "inefficiency and incompetency are closely related, and an incident or occurrence could constitute proof of both." In *Conder v. Bd. of Directors of Windsor Sch.*, 567 S.W.2d 377, 379 (Mo.App. 1978), the court said that a charge of incompetency requires a showing of lack of ability or legal qualifications or fitness to discharge the required duty and that a charge of inefficiency may be proved by a showing of a teacher's incapability or indisposition to do the things required. In *Conder*, charges of incompetency and inefficiency were supported by substantial evidence showing the teacher's grading system was "totally erratic," her failure to adhere to a planned teaching schedule and her inability to maintain "an organized classroom and organized instruction."

■ The two-day hearing before the Board commenced on May 19, 1980. Counsel appeared for the school district and Mrs. Rainwater appeared in person and by counsel. The school district presented the testimony of ten witnesses and Mrs. Rainwater called nine witnesses, including herself, on her behalf. On June 12, 1980, the Board reached its unanimous decision which contained an order terminating Mrs. Rainwater's indefinite contract. Accompanying the order were three pages of "findings of fact," 22 in number. Among the "conclusions of law"[3] contained in the decision was one reciting that Mrs. Rainwater "is and has been during the school year 1979–80, incompetent and inefficient in the line of duty as a teacher."

There is no claim by Mrs. Rainwater that the Board's "conclusion of law" was improperly stated. Her claim is, and the trial court found, that that conclusion was not supported by competent and substantial evidence upon the whole record.

Among the findings of the Board were these: During the school year 1979–80 Mrs. Rainwater "constantly failed to maintain order and discipline properly in her classroom"; "Even after the date of the warning letter, at least 20 of Mrs. Rainwater's

had permitted the students to use the record player without proper supervision; she gave no grade to a named student who was entitled to a grade and she gave a grade to a named student who was not entitled to one because of insufficient enrollment; Mrs. Rainwater had changed grades without good cause; the names of 10 students were given whose grades were subject to question; on March 24, 1980, she permitted one of her classes to become involved in continued foot stomping; on April 2 four kindergarten girls moved behind a file cabinet to talk and did so without Mrs. Rainwater's knowledge or concern; on April 8 yelling took place between Mrs. Rainwater and a child. "These examples are cited simply as an indication of the nature and type of problems which you have apparently been either unable or unwilling to correct."

**3.** Sec. 168.118(7) requires that a "decision" of the board, which results in termination of an indefinite contract, be by majority vote of the members of the board and be made within seven days after the transcript of the record is furnished the board. That statute also requires that a written copy of "the decision" shall be furnished the teacher within three days after the making of the decision.

Sec. 168.120 prescribes the procedure for appeal by the teacher. Sec. 168.120.2, reads: "2. The appeal may be taken by filing notice of appeal with the board of education, whereupon the board of education, under its certificate, shall forward to the court all documents and papers on file in the matter, together with a transcript of the evidence, the *findings* and the *decision* of the board of education, which shall thereupon become the record of the cause. Such appeal shall be heard as provided in chapter 536, RSMo."

The foregoing statute is the only statute in the Teacher Tenure Act which specifically refers to "findings" of the board and it does not mention "conclusions of law." Cases have held, however, that such a requirement is found in the last sentence of § 168.120, par. 2. *Stewart v. Bd. of Ed. of Ritenour Consol. Sch.*, 538 S.W.2d 765 (Mo.App.1976); *Hughes v. Bd. of Ed., Charleston, Etc.*, 599 S.W.2d 254, 256 (Mo. App.1980).

class sessions were in utter chaos"; Mrs. Rainwater did not have lesson plans for her classes on a daily or long-term basis, with defined goals and activities planned to meet those goals; she did not provide lesson plans for substitute teachers when she was absent; she did not give proper notice of absence on numerous occasions, making it difficult or impossible to obtain a substitute teacher; she improperly changed grades of students after the original submission of grades; she failed to give grades to some students who were entitled to grades; she was unable to explain satisfactorily the reasons for grades given to various pupils; adequate learning is not taking place at each grade level and there is no progressive learning from kindergarten through sixth grade; some improvement in her performance took place after the warning letter but improvement was not sufficient to raise her performance to a satisfactory level.

The excellent brief of Mrs. Rainwater challenges the sufficiency of the evidence but this court must review that evidence in a light most favorable to the Board's decision. A key witness for the Board was Peggy Denny, the elementary principal, who was Mrs. Rainwater's immediate supervisor. Mrs. Denny had observed Mrs. Rainwater's performance for seven or eight years. Her testimony, in general, supported the Board's findings. She also testified that she had observed 20 classes conducted by Mrs. Rainwater after the warning letter was sent. She described Mrs. Rainwater's classroom as one of utter chaos and testified, "There has been no substantial improvement." Although the record is replete with instances of Mrs. Rainwater's failure to keep her students under control, teachers substituting for Mrs. Rainwater in teaching her music students did not experience that difficulty nor did teachers of other subjects have disciplinary problems with those students. After the warning letter was sent Mrs. Rainwater continued her practice of being late for classes.

The court has reviewed the lengthy transcript containing the testimony of the witnesses. The charges contained in the letter of April 23, 1980, were supported by competent and substantial evidence on the whole record and the same is true of the findings of the Board. It may not properly be said that the Board's decision was clearly contrary to the overwhelming weight of the evidence. The record supports the decision of the Board to terminate Mrs. Rainwater's indefinite contract and the trial court erred in reversing the decision of the Board.

The judgment of the trial court is reversed and the cause remanded with directions to enter an order affirming the decision and order of the appellant, Board of Education.

GREENE, C.J., and MAUS and PREWITT, JJ., concur.