Vera POLLARD, Appellant,

v.

The BOARD OF EDUCATION REORGA-NIZED SCHOOL DISTRICT NO. III, PLATTE COUNTY, Missouri, Respondent.

No. KCD 27651.

Missouri Court of Appeals,
Kansas City District.

Feb. 9, 1976.

Don Witt, Platte City, for appellant.

John R. Moore, Platte City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

This case was initiated by an appeal to the Circuit Court of Platte County, Missouri, under § 168.120 (all statutory references herein being to RSMo 1969), by a permanent teacher, Vera Pollard, who challenged the termination of her employment by the Board of Education of Platte County R–III School District. The Circuit Court affirmed the decision of the Board of Education, and Pollard appeals.

On March 20, 1973, Gerald Hart, superintendent of the Platte County R–III School District, sent the following letter:

"Dear Mrs. Pollard:

"The Platte County R–III Board of Education wishes to notify you that improvement is needed in the following areas:

"1. Relationship with students
2. Enthusiasm in teaching
3. Disciplinary policies
4. Relationship with parents

"According to section 168.116 of Missouri Statutes you have 30 days to show improvement satisfactory to your principal, superintendent and Board of Education.

"If you have any questions about this you may contact me through your building principal. Please sign below and return one copy to the central office."

After the 30 day "improvement period" had passed, on May 17, 1973, Max L. Hunt, president of the School Board, notified Pollard that the Board proposed her termination and that a hearing would be held in accordance with § 168.118, if she so requested. The charges against Mrs. Pollard set forth as an exhibit to this letter were as follows:

"You are hereby notified the Board of Education has determined that your indefinite contract as a teacher in Reorganized School District R–III, Platte County, Platte City, Missouri, shall be terminated upon the ground that:

"1. Your poor relationship with students in that the students are fearful of you and therefore fail to communicate with you, and you with them.

"2. Your lack of enthusiasm in teaching in that you fail to properly plan and prepare your assignments and classroom activities.

"3. Your improper discipline of students in that you are unnecessarily harsh in your classroom disciplinary actions of students in the presence of other students causing the one being disciplined to be so embarrassed that the students desire not to return to your classroom.

"4. Your failure to properly relate with and communicate with the parents of your students."

Pollard requested a hearing, which was held on June 21, 1973. School supervisory personnel, teachers, parents of children in Pollard's classes, and Pollard herself testified as witnesses. Thereafter on July 9, 1973, Pollard received the notice that her teaching contract had been terminated, which is the subject of the present litigation.

On this appeal, Pollard claims (1) she had no sufficient or specific notice of the charges against her; (2) there was no evidence that she failed to improve during the 30 day improvement period; (3) hearsay was improperly admitted at the hearing on June 21, 1973; and (4) she did not get a fair and impartial hearing on June 21, 1973, because a hearing officer testified as a witness against her. In view of our agreement with the first of the points, the remaining three assignments of error need no consideration.

The method of terminating the indefinite contract of a permanent teacher is spelled out in §§ 168.114–168.120. Section 168.-114–1 sets out the exclusive grounds for termination. It provides:

"1. An indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for one or more of the following causes:

(1) Physical or mental condition unfitting him to instruct or associate with children;

(2) Immoral conduct;

(3) Incompetency, inefficiency or insubordination in line of duty;

(4) Willful or persistent violation of, or failure to obey the school laws of the state or the published regulations of the board of education of the school district employing him;

(5) Excessive or unreasonable absence from performance of duties; or

(6) Conviction of a felony or a crime involving moral turpitude."

■ The notice required to be given a permanent teacher before her indefinite contract can be terminated is set out in § 168.116. It provides so far as now pertinent:

"1. The indefinite contract of a permanent teacher may not be terminated by the board of education until after service upon the teacher of written charges specifying with particularity the grounds alleged to exist for termination of such contract, notice of a hearing on charges and a hearing by the board of education on charges if requested by the teacher.

"2. At least thirty days before service of notice of charges of incompetency, inefficiency, or insubordination in line of duty, the teacher shall be given by the school board or the superintendent of schools warning in writing, stating specifically the causes which, if not removed, may result in charges. Thereafter, both the superintendent, or his designated representative, and the teacher shall meet and confer in an effort to resolve the matter."

The notification of proposed termination dated May 17, 1973, did not specify which of the six statutory causes listed in § 168.114 the Board relied upon as the basis for termination. However, the 30 day "improvement letter" dated March 20, 1973, compels the conclusion that the Board was proceeding upon the ground of "incompetency, inefficiency or insubordination in line of duty" as provided in § 168.114–1(3). This inference arises because the 30 day improvement letter is required only when subsection (3) is relied upon, and no such special notice is necessary in connection with the other five grounds set forth in § 168.-114–1. *Blue Springs Reorganized School District IV v. Landuyt,* 499 S.W.2d 33 (Mo. App.1973). Therefore, when the Board did send the 30 day improvement letter, the conclusion is inescapable that it was relying on and proceeding under subsection (3). Having chosen this ground for action, the Board was bound by the terms of § 168.-116–2 to state in the 30 day warning letter "specifically the causes which, if not removed, may result in charges."

■ The warning letter of March 20, 1973, was totally insufficient to meet that statutory mandate. The letter merely announced very tersely that improvement was needed in the areas of (1) relationship with students, (2) enthusiasm in teaching, (3) disciplinary policies, and (4) relationship with parents. All four charges were so broadly drafted that Pollard had no way of knowing exactly how she should improve her conduct during the trial period. All of the charges were susceptible to such a wide variety of interpretations as to violate the general prohibition against proceedings to terminate a teacher upon non-informative allegations. *Blue Springs Reorganized School District IV v. Landuyt,* supra.

■ As stated in *Blue Springs,* "the purpose of § 168.116, subd. 2 is to give the teacher an opportunity to know exactly what the complaints against her are and to afford her a chance to cure the situation." Without knowledge of the specifics in which classroom conduct is deficient, a teacher who seeks to improve his or her teaching ability may find that such efforts result in classroom conduct that, in the minds of school authorities, is even less competent, less efficient, and less subordinate. In short, the teacher is caught in a double bind; the teacher must improve teaching qualities during the 30 day improvement period or risk termination. On the other hand, there is no assurance that *any* particular course of action undertaken by a teacher during this 30 day period will constitute sufficient improvement in the eyes of the board and school authorities. The teacher finds herself in a position of struggling blindly towards undefined and unknown standards of conduct. This defeats the purpose of the 30 day statutory improvement period.

The charges made by the School District in the *Blue Springs* case, supra, which this court held failed to meet the statutory requirements of specificity, were "poor teacher-pupil relationship because of discipline" and "poor influence on pupil attitude." The similarities between those allegations

and those in the instant case are obvious. They are mere ciphers and are totally ineffective to trigger the 30 day improvement period.

 We need not and do not rule whether the charges as amplified in the letter sent by the Board on May 17, 1973, notifying appellant of proposed termination, complied with the requirement of "specifying with particularity," as required by § 168.-116–1. Even if the charges listed in that letter be considered sufficiently specific, this was not enough to cure the defects of the allegations in the 30 day warning letter, and the May 17th letter could at best only trigger a new 30 day improvement period. The Board would then have been required to begin compliance at that point with the requirements of § 168.116, which was not done. In other words, if the May 17th letter be deemed properly specific, then it would constitute only a warning letter under subsection 2 and there would be no final termination notice as required by subsections 1 and 3.

The Board endeavors to escape the fatal defect in its warning notice by arguing on this appeal that its charges were sufficient to show a "mental condition unfitting [her] to instruct or associate with children" within subsection (1) of § 168.114–1, and that no warning notice whatsoever was required in connection with that ground for discharge. The fallacy in that argument is that the Board never gave the slightest hint to Pollard in its proceedings against her that it was relying on the ground now urged.

The "mental condition" referred to in subsection (1) means some psychiatric or psychological defect or disability sufficient to disqualify as a teacher. Neither the March 20 warning letter nor the May 17 termination notice carried any indication that such a charge was being leveled. Thus, Pollard had no reason to believe it necessary to produce evidence countering such a charge, and she understandably made no effort to do so at the June 21st hearing. Moreover, the Board itself made no effort to prove such a charge. It did not call as a witness any psychiatrist, psychologist or even a medical doctor. Even assuming that the "mental condition" in question could be proved solely by lay testimony, no evidence of bizarre or irrational conduct was proved from which the proscribed mental condition could be inferred.

The judgment is reversed and the cause is remanded with instructions that the trial court enter judgment, under the provisions of § 168.120–4, restoring Pollard to permanent teacher status and ordering that she receive compensation for any period during which she was suspended from work and further providing as set forth in § 168.116–4 (subject to the doctrine of mitigation held applicable in *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138 (Mo. banc 1975)) that she be paid her salary lost during the pendency of her appeal.

All concur.