**JEFFERSON CONSOLIDATED SCHOOL DISTRICT C-123, Respondent,**

v.

**Velda CARDEN, Appellant.**

**No. WD 40931.**

Missouri Court of Appeals, Western District.

May 2, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1989.

Application to Transfer Denied Aug. 1, 1989.

---

Stanley I. Dale, St. Joseph, for appellant.

Norman Humphrey, Jr., Steven P. Callahan, Independence, for respondent.

Before KENNEDY, C.J., and SHANGLER and GAITAN, JJ.

KENNEDY, Chief Judge.

Velda Carden was a sixth grade teacher in Jefferson C-123 Public School District. She had taught there since 1980 and was therefore a "permanent teacher", Section 168.104(4), RSMo 1986. Her tenure as a teacher was terminated by the Board of Education on June 15, 1988, for her alleged incompetence and inefficiency. This order is before us upon Mrs. Carden's appeal.

Mrs. Carden had begun her teaching career in 1943. After the 1948 school year she had quit and then had resumed teaching in 1962. At the time of her termination, she had taught continuously since 1962. She had taught in seven different schools, including Jefferson C-123 School District. She had a bachelor of science degree received in 1964, a master's degree received in 1974, and 15 hours college credit beyond the master's degree level.

Mrs. Carden had been evaluated by successive principals beginning in 1984 and her performance had been adjudged satisfactory. Debbie Runde became principal in 1987. On October 23, 1987, she had also evaluated Mrs. Carden as satisfactory with no adverse comments.

David Cross had been superintendent of Jefferson C-123 Public School District since February 1983. In February of 1988 Superintendent Cross urged Mrs. Carden to retire. Mrs. Carden, however, elected not to retire and so notified Cross.

At that point, Principal Runde began close observation of Mrs. Carden and her performance. On March 18 Mrs. Carden was given a 30-day warning letter as required by Section 168.116.2, RSMo 1986, which warned Mrs. Carden that if certain causes were not removed, they might result in charges of incompetency and inefficiency against her and the termination of her teaching contract. This was followed on April 26 by a statement of charges in purported compliance with Section 168.116.-1, RSMo 1986. Mrs. Carden requested a hearing thereon, which was held May 24, 1988. The hearing before the Board of Education resulted on June 15 with the order of termination. The order was affirmed by the circuit court, and Mrs. Car-

den has appealed to this court the circuit court judgment.

We reverse on the ground that the statement of charges against Mrs. Carden was not sufficiently specific to comply with Section 168.116.1, RSMo 1986, but we begin by stating the school administration's evidence adduced at the hearing to show Mrs. Carden's incompetence and inefficiency. We do not consider the sufficiency of the evidence as a whole to support the order of termination. Our purpose in stating the evidence fully in this opinion is to show the particularity of Mrs. Carden's alleged shortcomings as presented by the administration's evidence, against the broad generalities of the charges. All the school administration's evidence was adopted by the Board of Education in its formal findings of facts, except a charge that Mrs. Carden ineffectively motivated her students in the schoolroom, which charge was found in Mrs. Carden's favor.

The testimony of Mrs. Carden's alleged incompetence came mostly from Principal Debbie Runde, and consisted of several incidents:

1. At the end of the second quarter, Principal Runde noted that several of Mrs. Carden's students had failed a "map test". Principal Runde looked at the map that the children had before them for the test. The map had two things wrong with it—it had a lot of information on it that was unnecessary, and the map (of North America) was on the right side, whereas the map of North America Mrs. Carden was teaching from was on the left side.

Principal Runde helped Mrs. Carden find another map which Principal Runde herself revised with a lot of "whiting out", and she also had the librarian order a new map for Mrs. Carden's use.

2. Principal Runde testified that in the first part of January, she learned that one of the sixth grade boys had been tormenting two sixth grade girls by "grabbing them and touching them in places that he should not have been." When Principal Runde confronted Mrs. Carden with this, Mrs. Carden became upset because Principal Runde thought this was happening in Mrs. Carden's classroom. Principal Runde testified that, as it turned out, the offensive conduct on the part of the sixth grade boy was not taking place in Mrs. Carden's classroom.

3. As Principal Runde was talking with Mrs. Carden about the sixth grade boy's misbehavior toward the two sixth grade girls, Principal Runde noted that Mrs. Carden's classroom was so arranged that "it would have been very easy for the incident to have happened in her classroom". Principal Runde therefore gave Mrs. Carden a "job target" which included "rearranging her room and straightening things". Earlier in the school year, Principal Runde had proposed that Mrs. Carden try to arrange her classroom so as to make it less crowded. Mrs. Carden had made some progress, but Principal Runde thought that more improvement could take place.

4. On January 25 through January 28 Mrs. Carden was ill and a substitute teacher had to be called in. Mrs. Carden did not have lesson plans prepared for the substitute's use. When Principal Runde looked at Mrs. Carden's lesson plan book, she discovered there were no lesson plans for the preceding week either. Before the preceding week there were "sketchy" lesson plans. Principal Runde then asked that Mrs. Carden's lesson plans for each succeeding week be left in Principal Runde's office on Friday afternoon. For the next two weeks, however, the lesson plans were not turned in on Friday, although they were in the following Monday morning. From that point on, apparently Mrs. Carden's lesson plans were handed in to Principal Runde on Friday afternoon.

5. Principal Runde found (the time is not clear) that the various children in Mrs. Carden's room were at different stages of advancement. Some were far behind others.

6. The respective parents of two children requested additional help in math, and another parent called Principal Runde expressing specific concerns about the objective sheets that had been sent home. ("Objective sheets" are "grade cards" to another generation.) Principal Runde gave to

Mrs. Carden the names of the three families and Mrs. Carden spoke with the families of the three children.

7. At another time Mrs. Carden told Principal Runde that a certain special education youngster who was in her room was having difficulties with some of his tests. Principal Runde learned that Mrs. Carden was doing nothing different in dealing with this youngster than she was doing with the other students. Principal Runde therefore gave Mrs. Carden a "job target" dated February 12, 1988, this job target was, according to Principal Runde's testimony, "that when this little boy needed help on studying for a test or closer supervision on taking a test for her to feel free to use a special education aide with this young boy so that he could have the extra help". Principal Runde also suggested that another aide be called upon to give more supportive help with other children who were having difficulties.

8. Principal Runde described an incident in which a girl in Mrs. Carden's room reported to her parents that another child in the room had put some sticky substance between the pages of a dictionary. Principal Runde and Mrs. Carden together devised a rather elaborate scheme to get the offender to confess to his wrong. Mrs. Carden was carrying this out when Principal Runde heard Mrs. Carden ask the assembled students who it was that had reported the incident to her parents without telling the teacher about it. The little girl who had reported the incident to her parents raised her hand to acknowledge that she had done so. She was embarrassed and the child's parents were also upset. When confronted by Principal Runde about this, Mrs. Carden acknowledged that she should not have asked the little girl, that it wasn't the best thing.

9. Another incident described by Principal Runde occurred on March 8. Mrs. Carden that day had told her, Principal Runde, that "one of the boys on the playground was speaking very rough and disrespectfully to her, and she felt I would want to know about it."

10. On March 8 Principal Runde saw several sixth grade girls in shorts, whereas they had arrived at school in other clothes, perhaps jeans. Principal Runde asked Mrs. Carden if she had given the girls her permission to change clothing. Mrs. Carden had not given them permission. According to Principal Runde, "she did agree that it was rather cool that day and if they wear jeans to school they should keep them on all day".

11. Principal Runde one day noticed that three posters which the children had prepared for a contest had spelling errors in them. The children told Principal Runde that they had submitted rough drafts of their posters which Mrs. Carden had looked at and had approved before the final copies were made. Principal Runde assisted the makers of the posters to get the spelling corrected.

12. Principal Runde by prearrangement with Mrs. Carden observed a classroom session on April 5, when Mrs. Carden was teaching economics. The subject on this day was barter. Mrs. Carden's methods came in for some harsh criticism in Principal Runde's evaluation. While Mrs. Carden began by establishing a "set" ("today I would like to teach you about economics"), she did not state the "objective". Her strategy, as she had explained to Principal Runde beforehand, was to challenge the children to discover the objective. Near the end of the lesson Mrs. Carden asked the children if they had figured out the objective yet. The children gave several answers, none of them correct. Mrs. Carden then told them what the objective was, but a student interrupted her with a question as she was amplifying the objective, and she never returned to it. Mrs. Carden's attempts to check for comprehension were considered by Principal Runde to be ineffective in that only three or four of the children in the room were asked any questions, and most of the questions were "low level", i.e., they were questions that could be answered with one or two words. Principal Runde said that the lesson was not in a clear, logical, sequential format. Mrs. Carden gave directions to the children more than once, although the rule in Mrs. Car-

den's room is that the student is to follow the directions the first time they are given. Principal Runde acknowledged that Mrs. Carden's knowledge of the subject was adequate, and she approved the use by Mrs. Carden of a poster and a play. Said Principal Runde: "I felt the students seemed to enjoy Velda's posters and her play, but after they were over, they were just more interested in what their assignment was so they could get started on it. After they were into the assignment, and the children saw what time it was or getting close to what time it was, they became restless. At one o'clock they got up and lined up for recess without asking, because it was their recess time."

During this class the children were making an economic term dictionary, but they were never told why they were making it, or what it would be used for. Principal Runde believed that Mrs. Carden should have planned her time better so as to be able to draw the lesson to a close before the recess.

13. On one occasion, according to Principal Runde, Mrs. Carden "was trying to motivate the students to get them to play softball. Several of the children were refusing, so finally she demanded that they play".

14. During her April 14 classroom observation, Principal Runde went into Mrs. Carden's class to observe the children writing biographies. One little boy in the classroom was "drawing around his hand instead of doing the homework assignment" for ten minutes. After ten minutes the youngster started on the project. Although Mrs. Carden walked by his desk at least twice while he was engaged in the hand tracing project, she did not tell him to quit it and to start on his assignment. The biography was to be continued as homework, evidently, and Mrs. Carden told the class that the assignment was due tomorrow. She then asked if they thought it could be done by then and some of the class said no. By then class was over and it was never settled clearly whether the assignment was due the next day.

15. On March 24, the librarian reported that there was so much commotion and running around in the sixth grade classroom that the hanging heater under the sixth grade classroom was coming loose. One of the teachers on that occasion had to go in and ask the children to stop.

16. On March 28 Principal Runde observed the science lesson being taught by Mrs. Carden. On this occasion the children were recording in journals the progress of plants which were growing in the classroom. Principal Runde testified: "Velda was discussing with them what they needed to write down. She never really had the full attention of the class. So she would just state what they were to put and had to keep repeating the directions several times, she kept saying, 'Did you get it down?' I never saw her go directly to any student and look at what anyone had written."

17. On March 29 Principal Runde observed Mrs. Carden's sixth grade class for approximately 20 minutes during a reading period. The students were doing "worksheets". On the lesson plans this had been scheduled for the preceding day. For the day Principal Runde was observing, group instruction had been scheduled but no group instruction took place as scheduled.

18. One day Mrs. Carden left two grades unsupervised at recess while she went to the rest room.

19. Another instance which Principal Runde had recorded was on May 17, International Day, when the sixth grade students (and perhaps others) were preparing food in the kitchen. The food they prepared was exhibited and served to parents and other children from booths set up for the event. Principal Runde cleared out the children at lunchtime so the cooks could get in to prepare lunch. She found some of the children "running around in circles".

Superintendent Cross's testimony added the following criticisms of Mrs. Carden's performance:

20. During inclement weather Mrs. Carden's students were transported to the gym in the building where Superintendent Cross's office was located for their physical education periods. Superintendent Cross

observed "a general lack of attentiveness by the students of Mrs. Carden. The students seemed to be enthusiastic about having physical activities, but they did not wait or listen for directions from her. Velda did not clearly communicate directions to the students and essentially she appeared content to watch the students in an uninvolved manner."

21. On one occasion, when Superintendent Cross was driving the bus transporting Mrs. Carden and her students, "she preferred to let the driver quiet the students down or correct the students". Superintendent Cross said he felt that, when the teacher was on the bus, it was her duty to control her students at that time rather than the bus driver.

Finally, two mothers testified who had children in the sixth grade. Their testimony was about the difficulty their children had in making progress in Mrs. Carden's room, and about their lack of motivation. (The only charge found in Mrs. Carden's favor by the Board of Education, as noted earlier, was the charge that she failed to motivate her students in the classroom.)

There were introduced into evidence the evaluations which Principal Runde had made of Mrs. Carden, as provided by Section 168.114.2, RSMo 1986. The evaluations were explained by Principal Runde's oral testimony recounted above.

There was on the other side, besides the testimony of Mrs. Carden herself, testimony from three mothers who had, or had had, children in Mrs. Carden's sixth grade room who testified favorably to Mrs. Carden's competence as a teacher. A number of Mrs. Carden's colleagues in the school also testified to her competence.

One of the attacks made upon the order of termination is that the formal written charges against Mrs. Carden were not as specific as they are required to be by § 168.116.1, RSMo 1986. An early case of this court, *Blue Springs Reorganized School District IV v. Landuyt,* 499 S.W.2d 33 (Mo.App.1973), dealt with the requirement of specificity in the 30–day warning letter required by § 168.116.2, RSMo 1986. The requirement of specificity for the statement of charges is no less emphatic than for the 30–day warning letter. In *Blue Springs,* 499 S.W.2d at 36, Judge Wasserstrom wrote: "Even if it were not for the extremely strong language of § 168.116, calling for 'specifying with particularity,' general principles of law do not tolerate the maintenance of proceedings to terminate a teacher upon such noninformative allegations." A case applying the *Blue Springs* specificity standard to the statement of charges, resulting in the disapproval of the charges, is *Dameron v. Board of Education of Lebanon School District R–3,* 549 S.W.2d 671 (Mo.App. 1977). In that case the court said:

> The language of § 168.116, including the phrase 'specifying with particularity' describing the 'written charges,' is unmistakable. Clarity and emphasis were achieved by resort to redundancy. The legislature demonstrated its intention that an indefinite contract, and perhaps a professional career itself, should not be imperiled by mere platitudes.

*Dameron,* 549 S.W.2d at 677. *See also Pollard v. Board of Education Reorganized School Dist. No. III, Platte County,* 533 S.W.2d 667 (Mo.App.1976).

We here copy the charges made against Mrs. Carden and consider the question whether they "specified with particularity" the shortcomings which were shown by the administration's evidence which we have set out earlier in the opinion, and upon which the school board based its finding of incompetency and inefficiency and its order of termination:

1. During the 1987–88 school year, the lessons observed by your principal and superintendent were not well organized. This lack of organization appeared to be a result of a lack of time spent on preparation, general competence and efforts in planning.

2. During the 1987–88 school year, the above administrators noticed your lack of provision for individual student differences. You have failed to provide activities and solicit help for remediation and enrichment of student.

3. During the 1987–88 school year, the above mentioned administrators made note that you failed to present material in a well organized fashion and in a clear, logical and sequential manner.

4. During the 1987–88 school year, the above mentioned administrators observed that you need marked improvement in the area of checking student understanding. You have failed to monitor students with regard to specific assignments.

5. During the 1987–88 school year, Mrs. Runde observed a very apparent lack of student motivation in your classroom.

6. During the 1987–88 school year, the aforementioned administrators observed an apparent inability on your part to manage student behavior in a constructive manner. Instances of disruptive behavior were noted where constructive correction and elimination of the causes of the undesirable behavior were not accomplished by you.

None of these charges informed Mrs. Carden of the specific and particular charges she would have to meet at the hearing. The case illustrates the wisdom and the justice of the specificity requirement in the statement of charges. The school administration's case for incompetency and inefficiency, or either, was to be made by an accumulation of instances of allegedly deficient performance. Over a period of approximately three months, Principal Runde—and to a lesser extent Superintendent Cross—were observing Mrs. Carden's alleged faults and setting them in a notebook. The school administration knew what the instances and incidents were as the hearing commenced, but Mrs. Carden did not. Had she been informed in advance of the specific and particular instances of alleged incompetence with which she would be faced, she could have been prepared to contradict them or to explain them. As to many of the instances of alleged incompetency and inefficiency which Mrs. Runde testified to, there was no reason for Mrs. Carden at the time

of their occurrence to suppose that the administration considered them to be demonstrative of incompetency and that they would be advancing them as evidence of incompetence.

We have examined the cases cited by the school board which approve, against claims of non-specificity, the charges or the warning letters under consideration in the respective cases. They are: *Cozad v. Crane School District R–3*, 716 S.W.2d 408 (Mo. App.1986); *Iven v. Hazelwood School District*, 710 S.W.2d 462 (Mo.App.1986); *Rafael v. Meramec Valley R–III Board of Education*, 569 S.W.2d 309 (Mo.App.1978); and *Merideth v. Board of Education of Rockwood R–6 School District*, 513 S.W.2d 740 (Mo.App.1974). In each instance the charges or warnings were more detailed, specific and particular than here, and actually present contrasts to the present case. In *Rafael v. Meramec Valley R–III Board of Education*, 569 S.W.2d at 313, the charges are described in the opinion as follows:

The manner of presentation of the charges in this case was to first state the substance of the charges; for example, 'that student achievement shows little, if any, relationship to grades given to the students.' We consider this to be a reasonably clear statement that appellant was being charged with awarding grades to students that did not correctly reflect the student's achievement. As to this charge there then followed six specifically stated instances, and under one of these there are 18 examples.

"These instances and examples," the court went ahead to say, "constituted statements of the *evidence* by which the Board intended to prove the charges." *Rafael*, 569 S.W.2d at 313–14. Apparently our sister court of the Eastern District would have allowed the omission from the charges of what they called "statements of evidence by which the Board intended to prove the charges". We think, however, that it is something approaching this degree of particularity which is called for by § 168.116.1 and by *Blue Springs Reorganized School District IV v. Landuyt*, 499

S.W.2d 33, by *Dameron v. Board of Education of Lebanon School District R–3,* 549 S.W.2d 671 and by *Pollard v. Board of Education Reorganized School Dist. No. III, Platte County,* 533 S.W.2d 667. In formal court proceedings a party has available to him machinery which enable him to discover exactly what he must meet in court. A pleading therefore needs only to state ultimate facts, and a pleading which descends into evidentiary specifics is not considered good pleading. In teacher termination proceedings, however, where discovery is not provided, the charges must perform the office of discovery in pinpointing the allegations.

Our holding that the charges were insufficiently specific to comply with § 168.116.1 is dispositive of the appeal, and it is not necessary for us to consider the other points raised by the appellant.

The judgment is reversed and the cause is remanded with instructions that the trial court enter judgment, under the provisions of Section 168.120.4, RSMo 1986, restoring Carden to permanent teacher status, and further providing as set forth in Section 168.116.4, RSMo 1986 (subject to the doctrine of mitigation held applicable in *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138 (Mo. banc 1974)), that she be paid her salary lost during the pendency of her appeal. *See Pollard v. Board of Education Reorganized School District No. III, Platte County,* 533 S.W.2d 667, 671 (Mo.App.1976).

All concur.