Kathleen O'CONNELL, Appellant,

v.

The SCHOOL DISTRICT OF SPRINGFIELD R–12, Respondent.

No. 74218.

Supreme Court of Missouri, En Banc.

April 21, 1992.

Concurring Opinion by Senior Judge Charles B. Blackmar June 2, 1992.

Rehearing Denied June 2, 1992.

William A.R. Dalton, Springfield, for appellant.

Ransom A. Ellis III, Cynthia J. Hyde, Springfield, for respondent.

Steven L. Wright, Gen. Counsel, Mo. School Boards Assn., Columbia, for amicus, Mo. School Bds. Assn. and Mo. Assn. School Administrators.

COVINGTON, Judge.

Appellant Kathleen O'Connell was a tenured, permanent teacher under an indefinite employment contract with the School District of Springfield R–12. §§ 168.104(4) and 168.106, RSMo 1986. The District terminated appellant's indefinite contract on August 1, 1990, for "incompetency and inefficiency as set forth in § 168.114.1(3), RSMo." Upon appeal the circuit court affirmed the District's decision. § 168.120, RSMo 1986. The Missouri Court of Appeals, Southern District, reversed. This Court granted transfer to consider whether O'Connell received adequate notice of the charges against her. The judgment of the circuit court is affirmed.

On January 31, 1990, the District superintendent of schools provided written notice to appellant of claimed deficiencies in her job performance. The notice was in the form of a letter that, in its first paragraph, advised appellant that if the deficiencies were not "removed by the end of the second semester," charges might be filed against her. The letter continued:

In spite of the efforts of the District Administrators, deficiencies in your performance remain. In past years, numerous conferences have been held with you. During these conferences, suggestions and directives have been given by an Assistance Team and District Administrators to assist in the improvement of your performance. However, to date, significant improvement has not occurred. Accordingly, this letter constitutes a statutory warning that if satisfactory improvement is not made by June 9, 1990, formal charges will be brought against you and your employment may be terminated.

Areas of performance deficiencies include the following:

A. *INSTRUCTIONAL PROCESS*

1. Failure to use a variety of effective teaching techniques and methodologies.

2. Failure to use instruction time effectively.

3. Failure to demonstrate effective planning skills.

4. Failure to communicate effectively with students.

5. Failure to provide effective student evaluation.

6. Failure to provide opportunity for individual differences.

B. *CLASSROOM MANAGEMENT*

1. Failure to manage student behavior in an appropriate manner.

2. Failure to establish and maintain a positive classroom climate conducive to learning.

C. *POSITIVE INTERPERSONAL RELATIONS*

1. Failure to demonstrate effective interpersonal relations with students.

Although these deficiencies are of the gravest nature, it is our hope that the deficiencies may be removed and, to that extent, we are willing to make available for your assistance the continued services of District teachers and administrators. Please contact Dr. Ann Barefield and Mr. Bill Reed to arrange a conference at your convenience to discuss methods for improvement.

On June 6, 1990, an eighteen-page written "Statement of Charges Preferred Against Kathleen O'Connell" provided notice of formal charges against appellant. The superintendent of schools notified appellant by letter that appellant could request the Board of Education to conduct a hearing to consider the charges against her. Appellant requested a hearing. At the hearing on July 21, 1990, a stenographic verbatim record was made, a transcript of which was completed and filed with the Board. Following the filing of the transcript, the Board rendered its decision terminating appellant's employment on the grounds of incompetency and inefficiency.

■ Appellant's first point on appeal alleges that the January 31, 1990, letter failed to set forth the deficiencies with sufficient particularity to satisfy the requirements of § 168.116, RSMo 1986, and that, as a consequence, the action taken by the district is void.

Section 168.116 sets forth the procedures to be followed in order to terminate an indefinite contract of a permanent teacher on grounds of incompetency or inefficiency. In pertinent part, § 168.116 reads as follows:

2. At least thirty days before service of notice of charges of incompetency, inefficiency, or insubordination in the line of duty, the teacher shall be given by the school board or the superintendent of schools warning in writing, stating specifically the causes which, if not removed, may result in charges. Thereafter, both the superintendent, or his designated representative, and the teacher shall meet and confer in an effort to resolve the matter.

§ 168.116.2, RSMo 1986.

Prior to any hearing that may occur pursuant to § 168.118, RSMo 1986, § 168.116 requires compliance with a three-step process, the first two of which are explained in *Selby v. North Callaway Bd. of Educ.*, 777 S.W.2d 275 (Mo.App.1989):

"1. Under § 168.116.2 a written warning must be given the teacher by the school board, "stating specifically the

causes which, if not removed, may result in charges." Section 168.116.1. This is referred to as the "warning letter."

2. The next step is the superintendent or a designated representative must "meet and confer with the teacher, in an effort to resolve the matter." Section 168.116.2. The teacher is to be given at least 30 days during this period to remedy the deficiencies noted in the warning letter. *Id.; Hanlon v. Board of Education of Parkway School District,* 695 S.W.2d 930, 932 (Mo.App.1985). This 30 day period can be expanded, and will be referred to as the "curative period." "The purpose of § 168.116.2 is to give the teacher an opportunity to know exactly what the complaints against him are and afford him an opportunity to cure the situation before charges are brought." [*Adkins v. Hazelwood School District,* 743 S.W.2d 869, 872 (Mo.App. 1987) ]."

*Id.* at 276.

The inquiry in this case focuses on the purpose of the warning letter. The purpose of the warning letter is to guarantee the teacher an opportunity to know exactly what the complaints are against him or her and to afford the teacher a chance to cure the situation before the charges are brought. *Artherton v. Bd. of Educ. of School Dist. of St. Joseph,* 744 S.W.2d 518, 521 (Mo.App.1988); *Adkins v. Hazelwood School Dist.,* 743 S.W.2d at 872; *Iven v. Hazelwood School Dist.,* 710 S.W.2d 462, 464 (Mo.App.1986); *Rainwater v. Bd. of Educ. of Greenville,* 645 S.W.2d 172, 175 (Mo.App.1982); *Blue Springs Reorganized School Dist. IV v. Landuyt,* 499 S.W.2d 33, 36 (Mo.App.1973). The determination of whether a warning letter fulfills the requirements of § 168.116.2 must necessarily be made on a case-by-case basis. The question must always be whether the intent and purpose of the warning requirement is met under the facts and circumstances of the case presented.

Appellant relies principally upon *Pollard v. Bd. of Educ. Reorganized School Dist.,* 533 S.W.2d 667 (Mo.App.1976); *Dameron v. Bd. of Educ. of Lebanon School Dist.,* 549 S.W.2d 671 (Mo.App.1977); *Cozad v. Crane School Dist.,* 716 S.W.2d 408 (Mo. App.1986); and *Jefferson Consol. School Dist. v. Carden,* 772 S.W.2d 753 (Mo.App. 1989). The notice of deficiencies in *Pollard* and *Dameron* were stated in general language similar to the language of the January 31 warning letter to appellant. In both cases the courts found the notices to be insufficient. Appellant contrasts the notices in *Pollard, Dameron,* and her own case with that given in *Cozad v. Crane School Dist.* The *Cozad* letter set forth the general causes of the deficiencies, then provided particular examples of the teacher's performance. *See Cozad,* 716 S.W.2d at 410–11.

On its face, the warning letter sent to appellant appears to lack the specificity required in *Pollard* and *Dameron* and approved in *Cozad.* It is notable, however, that in none of the cases upon which appellant relies is there an indication that the teacher was made aware of problems prior to receipt of the warning letter. The *Pollard* opinion evidences no indication of notice of previous difficulties. *See Pollard,* 533 S.W.2d at 668–70. In *Dameron,* the first time that Mr. Dameron received specific information regarding the nature of complaints against him was the day of the hearing. *Dameron,* 549 S.W.2d at 674. In *Jefferson,* which involved charges under § 168.116.1, rather than notice of deficiencies under § 168.116.2, there was no complaint about the warning letter, but the court found the charges under § 168.116.1 to be too vague for the teacher to contradict or explain. *Jefferson,* 772 S.W.2d at 759. In *Jefferson* the teacher had been consistently evaluated as satisfactory, the most recent evaluation having been made only five months prior to the warning and containing no adverse comments. *Id.* at 753.

While the letter received by appellant may appear to lack sufficient specificity, it cannot be considered in a vacuum. In contrast to the cases upon which appellant relies, the warning letter in this case followed a lengthy and detailed process of evaluation in which appellant received numerous evaluations written in language

identical to that contained in the termination letter. Read with the evaluations preceding, the warning letter was sufficiently specific so as to provide notice of deficiencies, thereby giving appellant the opportunity to improve. Under the facts and circumstances it is unreasonable, if not impossible, to find that the purposes of § 168.116.2 were not achieved.

It is important to set forth the basis upon which the school district evaluated its teachers. In 1988 the District adopted and implemented a detailed performance-based teacher evaluation system. The District promulgated a Teacher Performance Evaluation Handbook. The Handbook sets forth sixteen performance criteria to be met by each teacher, each criterion being further described by no fewer than four and no more than thirteen specific performance sub-criteria called "descriptors." The performance criteria form the basis for the performance based teacher evaluation system and constituted the method by which appellant was evaluated during the period commencing with the school year 1987–88 and continuing through June 6, 1990. The evaluation process is thorough. Through scheduled and unscheduled classroom observations, supervisory personnel collect objective performance data.

During an evaluation cycle, the District collects information and charts the development of a teacher through announced and unannounced walk-through observations of the classroom and "formative" evaluations. Formative evaluations are formal evaluations of the teacher in a classroom setting by the principal or other District officials. The formative evaluations focus on the sixteen performance criteria set out in the Handbook. Examples from appellant's formative evaluations provide illustration of both the criteria and the specificity of the evaluation:

Formative Evaluation (Long Form)— 11/15/89 (D.Ex. 54)

Criterion: Manages Student Behavior in an Appropriate Manner
Data: Most negative behavior was ignored or not followed through. Andy was told to put up his box at 9:11, but was still playing with it at 9:16. Three students had their head down on their desk for over five minutes, but no response from teacher. Steve was sitting for 9 minutes playing with his pencil, turned around in his seat.

Formative Evaluation (Long Form)— 11/15/89 (D.Ex. 54)

Criterion: Uses a Variety of Effective Teaching Techniques and Methodologies
Data: ... Objectives were not clearly stated. There was little or no observable teacher input, modeling or checking for understanding. The board work was guided practice, but the entire instruction time was guided practice with no apparent objective.... Closure for Group 1 was not effective ...

Formative Evaluation (Short Form)— 12/1/89 (D.Ex. 57)

Criterion: Uses Instruction Time Effectively
Data: Group One, with eight students, were not working on math at 9:02. Math began at 8:50. Four students were working spelling or writing and four students were not working at all. Clinton was the only student working at 9:10 on any subject. The entire group of eight students were not working at 9:15. Crystal had her head down for four minutes and Kelli had her hand up from 9:10–9:14 and was ignored and gave up and daydreamed. Students must be challenged to keep them on task.

At the termination of an evaluation cycle, the teacher is presented with a "summative" evaluation that summarizes all previous formative evaluations, classroom observations, and other relevant data. The summative evaluation presents the supervisor's rating of the teacher's performance within each of the sixteen performance criteria.

During the period from November, 1987, to February 2, 1990, when appellant received the warning letter, the District worked with and counselled appellant through nine formative evaluations and two summative evaluations. The appellant also participated in nine corrective confer-

ences. She received three critical counseling letters and two curriculum supervisors' reports. In December of 1988, appellant was informed that she did not meet three performance criteria and needed improvement on three additional performance criteria. In March of 1989, the assistant superintendent for elementary education notified appellant that the March, 1989, summative evaluation was unsatisfactory. The assistant superintendent's letter stated: "... You will participate in a complete evaluation cycle during the 1989–90 school year. At that time, it will be necessary for me to recommend termination of your employment with the Springfield Public Schools if the areas of deficiency on your summative evaluation have not improved significantly."

From March, 1989, through November, 1989, appellant participated in one formative evaluation, four "formative data reports," and a summative evaluation. The "formative data report" is substantially the same in form as the formative evaluation. In addition, the principal of the appellant's school, Mr. Reed, made an unannounced classroom observation and observed that several of appellant's students were not receiving grades for work which they had done. During this time Reed repeatedly informed appellant of the need to grade work that the students had done so that students and parents would have feedback as to the student's progress. On November 6th, 1989, Reed, in a memorandum to the assistant superintendent for elementary education, stated that he had seen some improvements in planning skills and providing an appropriate environment for the second grade students. He further reported, however, that appellant had not improved in the area of using a variety of teaching techniques and methodologies. Mr. Reed at that time recommended appellant's removal.

The District provided additional detailed information to appellant during the three month period immediately preceding issuance of the warning letter. As with earlier evaluations, the formative and summative evaluation forms described each instance of alleged incompetency in detail

and in association with a particular performance criteria. A representative of the District discussed the evaluations and walk-through observations with appellant and provided her a copy of each evaluation and report at the conclusion of each meeting. On January 31, 1990, the District sent the warning letter to appellant. The letter referred to nine specific deficiencies in appellant's performance. The performance criteria listed in the letter were the exact deficiency areas stated in identical language in appellant's nine prior formative evaluations and two prior summative evaluations.

After transmission of the warning letter to appellant, the District, through Dr. Barefield and Mr. Reed, began to meet and confer with appellant in an effort to resolve deficiencies. The parties discussed a variety of techniques appellant could use to improve the areas in which she was deficient. Appellant does not contend that at these required conferences she was not adequately informed of any details concerning her deficiencies nor that she was not given opportunity to make inquiry. *See Rafael v. Meramec Valley R–III Bd. of Educ.*, 569 S.W.2d 309, 314 (Mo.App.1978). Between February 2, 1990, and June 6, 1990, the District continued to evaluate and attempted to assist appellant. The District performed three additional formative evaluations and one summative evaluation. Each evaluation listed in detail, with illustrative specific incidents, the deficiencies in performance. Each keyed deficiencies to the performance criteria that appeared in the warning letter and in the Evaluation Handbook.

The present case is similar to the cases of *Iven v. Hazelwood School Dist.* and *Adkins v. Hazelwood School Dist.* In *Iven* the court found that a letter containing the general causes of incompetency, the specific causes and a reference to the formal evaluation performed within a month prior to receipt of the warning letter, afforded the teacher the necessary statutory warning. *Iven*, 710 S.W.2d at 464–65. In *Adkins*, the letter attached evaluations and documents, making reference to a formal

evaluation given to the teacher one month prior to his receipt of the warning letter. *Adkins,* 743 S.W.2d at 871–72. The court in *Adkins* found that the packet of information Adkins received served adequately to inform him of the complaints against him and afforded him the chance to cure the situation. *Id.* at 873.

The court in *Adkins* properly permits notice through specific reference to prior evaluations. While the letter in the present case fails specifically to refer to prior evaluations, other than in general terms, the letter uses the same language employed in the evaluation forms and conferences held in the three months immediately preceding the formal notice and in the evaluations subsequent to the formal notice. While specific reference to prior evaluations is the recommended practice, in the present case the warning letter, coupled with the evaluations that preceded the letter, clearly put appellant on notice of her deficiencies and the steps she would have to take to correct those deficiencies.

The facts of the present case in summary portray a teacher with long-term problems who underwent a sequence of detailed evaluations leading to the warning letter. All of the evaluations and commentary were made available to appellant, and she was engaged in conferences with numerous assistance personnel throughout. The significance of the fact that the terminology in the warning letter mirrored that used in all previous evaluations cannot be understated. The very process of evaluation undertaken by the district served to avoid the problem of insufficient notice that § 168.116.2 is designed to address.

Under the facts and circumstances of this case none of the deficiencies listed was susceptible to such a wide variety of interpretations as to violate the general prohibition against proceedings to terminate a teacher upon non-informative allegations. *Blue Springs Reorganized School Dist. IV,* 499 S.W.2d at 36. Appellant did not find herself "struggling blindly toward undefined and unknown standards of conduct," *Pollard,* 533 S.W.2d at 670, but instead was informed in every step of the process by evaluations, reports and conferences. Appellant's first point is denied.

In her second point appellant contends that the January 31, 1990, warning letter "expired" because the District did not act within a reasonable time after issuance of the letters. Appellant expands her point in argument to include a second point: she asserts that the District's failure to act within a reasonable time, coupled with a notice of reemployment in April and receipt of notice of classroom assignments for the school year following, should work an estoppel.

Appellant received the warning letter on February 2, 1990. The warning letter stated that if improvement was not made by June 9, 1990 formal charges would be brought against appellant. The District issued charges against appellant on June 6.

■■■ Section 168.116.2 requires a curative period of "at least thirty days" from the time of the warning letter to the actual service of notice of charges. An enlargement of time is not prohibited. *Selby,* 777 S.W.2d at 276. A reasonable enlargement of time to correct deficiencies works for the benefit of the teacher. *Rafael,* 569 S.W.2d at 315. The District acted within its discretion by enlarging the minimum thirty day period required between the warning letter and the charges to a four month period. *See Cozad,* 716 S.W.2d at 411; *Rafael,* 569 S.W.2d at 315.

Appellant's alternative argument under this point is that the District is barred by estoppel, laches, or waiver from terminating her because of the District's action of notifying her of the 1990–91 contract modification and classroom assignment.[1] Although it might have been prudent of the school administration to have advised the teacher of reserved rights when notifying

---

1. Appellant also equates estoppel with the doctrine of ratification. She confuses the purposes of the doctrines. Ratification is an act by a principal whereby the principal adopts or confirms an act of another purported to have been done on behalf of the principal. *Vogel v. A.G. Edwards & Sons, Inc.,* 801 S.W.2d 746, 757 (Mo. App.1990). For the purposes of this opinion, it is conceded that the District accepted the actions of Mr. Reed in relation to appellant.

her of the contract modification, appellant's arguments are without merit.

Except in exceptional circumstances estoppel does not lie against governmental entities, including school districts. *Coalition to Preserve Educ. v. Kansas City School Dist.*, 649 S.W.2d 533, 539 (Mo.App.1983). Even assuming exceptional circumstances, estoppel requires, among other elements, "an admission, statement, or act inconsistent with the claim afterward asserted and sued upon." *Missouri Highway & Transp. Comm'n v. Myers*, 785 S.W.2d 70, 73 (Mo. banc 1990). In April of 1990, the District modified the contracts of all permanent tenured teachers. At the time of the contract modification, appellant was a permanent tenured teacher with the District. As required by statute, the District informed all affected teachers, including appellant, of the contract modification. *See* § 168.110, RSMo 1986. In the month of May, Mr. Reed provided classroom schedules and assignment to all teachers at the school. In April charges had not yet been filed against appellant; the possibility existed that she would not be terminated. At most, the contract modification and classroom assignments informed appellant of her salary and classroom assignments *if* she were employed for the 1990–91 school year. The actions of the district in providing a contract modification and classroom assignments were not inconsistent with the subsequent acts of charges and termination.

Appellant also invokes the doctrines of waiver and laches. While akin to estoppel, the doctrine of laches is more accurately described as an equitable doctrine barring a claim if an unreasonable delay prejudices an opposing party. *Mississippi–Fox River Drainage Dist. No. 2 v. Plenge*, 735 S.W.2d 748, 754 (Mo.App.1987); *see also Kimble v. Worth County R–III Bd. of Educ.*, 669 S.W.2d 949, 954 (Mo.App. 1984). As both *Cozad* and *Rafael* explain, it is neither unreasonable nor prejudicial for a school district to provide a teacher time in excess of the minimum required by § 168.116.2 to correct deficiencies. *Cozad,*

716 S.W.2d at 411–12; *Rafael,* 569 S.W.2d at 315.

Waiver is also inapplicable. Waiver is the intentional relinquishment of a known right. If waiver is implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right. *Shapiro v. Shapiro*, 701 S.W.2d 205, 206 (Mo.App.1985). As already explained, the contract modification and classroom assignments merely assured appellant of certain rights and responsibilities if retained for the 1990–91 school year. These actions, neither expressly or implicitly, evidenced the District's intent to relinquish its right to terminate appellant.

Appellant asserts in her third point that the contract modification she received in April constituted a "negligent misrepresentation" that she would be employed for the 1990–91 school year. Appellant claims that she relied on the misrepresentation to forgo searching for another job and therefore suffered a substantial loss in potential employment.

Nothing in the record corroborates appellant's claim of reliance on the supposed misrepresentation. In addition, appellant has failed to show in what manner the District was negligent or misrepresentative in sending her the contract modification information. Negligent misrepresentation requires proof, among other elements, of the District's failure to exercise reasonable care and competence in communicating with appellant concerning her prospects for future employment and proof that the representation misled appellant. *See AAA Excavating v. Francis Const., Inc.*, 678 S.W.2d 889, 893 (Mo.App.1984). As noted above the contract modification information is statutorily required. The District made clear to appellant, through evaluations conducted immediately after she received the contract modifications, its intention to terminate her if she did not correct the deficiencies outlined in the January warning letter. The District exercised reasonable care and competence and did not mislead appellant in communicating about her prospects for continued employment. Appellant's third point is denied.

In her fourth point appellant asserts for the first time that the District's warning letter and the statement of charges were inconsistent. The issue is not preserved; the place for appellant to have made this contention was at the hearing. *Rafael,* 569 S.W.2d at 314. This Court's *ex gratia* plain error review reveals no inconsistencies.

Appellant in her fifth point attacks the right of the School Board to conduct the termination hearing. Appellant argues that the Board was biased and prejudged her case, depriving her of the right to a fair and impartial hearing and ruling.

Appellant's point is without merit. The law is well-settled that the school board for the district that initiates charges against the teacher may also conduct the hearing, absent actual bias or prejudice. *Ross v. Robb,* 662 S.W.2d 257, 259 (Mo. banc 1983); *Eddington v. St. Francios Cty. R–III Bd. of Educ.,* 564 S.W.2d 283, 285 (Mo.App. 1978); *See also, Hortonville Dist. v. Hortonville Ed. Ass'n,* 426 U.S. 482, 496–97, 96 S.Ct. 2308, 2315–16, 49 L.Ed.2d 1 (1976).

Appellant attempts to show bias by citing to the fact that of thirty-five objections her attorney made at the hearing, the Board sustained only two. Appellant has no ground upon which to claim bias unless she can show that the Board erred in refusing to sustain the objections. Appellant does not attempt to do so.

Appellant also alleges bias on the ground that the Board ignored evidence of the contract modification notice and classroom schedules and assignments for subsequent school year. She is incorrect. The Board in its findings noted that appellant received the contract modification and classroom assignment, and that all other teachers at appellant's school had also received these items. As to her claim that the Board prejudged her case, appellant makes no argument nor does she cite to evidence in support of the claim, which is without foundation.

The decision of the School Board in terminating the indefinite contract of Kathleen O'Connell must be affirmed.

ROBERTSON, C.J., BENTON, J., and RENDLEN and BLACKMAR, Senior Judges, concur.

THOMAS, J., dissents in separate opinion filed.

HOLSTEIN, J., concurs in opinion of THOMAS, J.

THOMAS, Judge, dissenting.

I respectfully dissent. Section 168.116.2, RSMo 1986, requires that the teacher shall be given a "warning in writing, *stating specifically the causes which,* if not removed, may result in charges." (Emphasis added.)

The majority opinion quotes from *Selby v. North Callaway Bd. of Educ.,* 777 S.W.2d 275 (Mo.App.1989), that "[t]he purpose of § 168.116.2 is to give the teacher an opportunity to know exactly what the complaints against [her] are and afford [her] an opportunity to cure the situation before charges are brought." Too much information can obscure understanding just as effectively as no information. Broad generalizations without specific information is often the fundamental equivalent of no information at all. The language of the warning letter sent to the appellant was lifted from the performance-based teacher evaluation system that the District had adopted three years earlier. Each of the "specific causes" listed in the warning letter was one of the sixteen general performance criteria to be met by each teacher under the overall performance evaluation system. Each of these criteria is broken down in the Handbook and further described by no fewer than four, and no more than thirteen, specific performance sub-criteria called "descriptors." These sixteen areas of performance criteria constituted the entire evaluation system, and they were presumably broad to cover every conceivable area in which a teacher could be deficient so as to justify her discharge. Appellant's warning letter said she was deficient in nine of these sixteen areas. In other words, if each category were of equal breadth and importance, the appellant was being told that she was a failure as a

teacher in 62.5 percent of all of the areas in which the system was designed to evaluate performance under any circumstance. Under the heading of "Instructional Process," appellant was told she was deficient in six of the eight possible categories. These were as follows:

1. Failure to use a variety of effective teaching techniques and methodologies.

2. Failure to use instruction time effectively.

3. Failure to demonstrate effective planning skills.

4. Failure to communicate effectively with students.

5. Failure to provide effective student evaluation.

6. Failure to provide opportunity for individual differences.

Each of the foregoing categories was backed up by more specific criteria called "descriptors." For example, the sub-criteria for item # 1 are as follows:

1. Reviews and previews (i.e., establishes anticipatory set).

2. States instructional objectives.

3. Presents subject matter which is accurate and appropriate for the objective.

4. Uses a variety of teaching techniques appropriate to student needs and subject matter (e.g., lecturing, modeling, questioning, experimentation, role-playing, active learning).

5. Uses a variety of teaching methods appropriate to student needs and subject matter (e.g., cooperative learning, inquiry).

6. Checks for understanding during the learning process.

7. Provides a variety of activities to ensure successful understanding (i.e., guided practice, alternative experiences, audiovisuals, supervised activities).

8. Provides appropriate independent practice or activities which require application of the skills and concepts taught.

9. Provides opportunity for creative and/or critical thinking skill development.

10. Establishes closure.

11. Varies techniques and methods to improve instruction and facilitate increased student learning.

In all, the nine performance criteria areas listed in appellant's warning letter were broken down into eighty-six sub-criteria descriptors. Some of these descriptors were sufficiently specific so that if they, in fact, were applicable, appellant would have been adequately informed as to the deficiency being warned of by that specific sub-criteria. For example, in the letter under item number 3 stating "[f]ailure to demonstrate effective planning skills[,]" sub-criteria number 8 specified that she failed to provide adequate plans and procedures for substitute teachers. Query whether this really was one of the deficiencies leveled against appellant? On the other hand, many of the sub-criteria were so general that even they would not specifically inform appellant of a particular problem. For example, consider any of the eleven sub-criteria quoted above. It is a virtual certainty that the District did not intend to warn appellant of a problem in all eighty-six of the sub-criteria descriptors covered by the nine general performance criteria areas listed in the letter. If this is true, then appellant is left with the question of, "Which sub-criteria am I being warned about, and which am I not being warned about?" The basic problem with the warning letter is that it represents an effort by the District to use the language and structure of the performance evaluation system as a ready-made check list for the preparation of the warning letter; this requires the language and structure of the evaluation system to perform a function it was not designed to accomplish and is not adequate to perform. The warning letter really told the appellant nothing because it told her too much in too general terms.

The majority relies upon the fact that appellant had been meeting with her superiors and they had been counseling with her for a period of approximately 27

months, during which she had received nine formative evaluations and two summative evaluations, which, it is granted, contained very specific information as to complaints and suggestions for improvement of her teaching. In my view, the volume of previous information and advice she had received actually enhanced her need for a specific warning letter. At best, her warning letter said to her, "Your problem is everything we have told you in the last twenty-seven months." Was appellant to assume that the improvements she had worked on and the suggestions she had followed for that period of time had been complete failures and nothing had been improved to a satisfactory level, or that some areas had been improved to a satisfactory level but others had not, and, if so, which were which? The warning letter she received gave her no answers to any of these reasonable inquiries.

Litigation lawyers, who often engage in discovery disputes involving the production of documents in preparation for trial, sometimes refer to the less-than-admirable strategy known by the jargon phrase of "warehousing your opponent." This refers to the practice of producing such a large volume of documents, i.e., a whole warehouse full, that the opponent is unlikely to find the documents that are important to the case. Using that jargon to describe the warning letter appellant received, it could be said she got a "warehouse warning letter." The letter told her so much in such broad terms, it did not tell her anything.

The majority takes the position that since she had received large volumes of specific information over the prior twenty-seven months preceding the warning letter, a meaningful warning letter was not necessary. While this conclusion may be valid, in view of the requirements of the statute, I believe this to be a decision which the legislature made when it enacted § 168.-116.2. In the face of the clear statutory language mandating a specific warning letter, I do not believe it was intended that this Court should have the prerogative to read out of the statute the requirement that the teacher be given a "warning in writing, stating specifically the causes which, if not removed, may result in charges."

I would reverse the trial court and the District because the warning letter did not meet the requirements of the statute.

CHARLES B. BLACKMAR, Senior Judge, concurring.

I announced my concurrence in the principal opinion before I realized that there would be a dissent, which was not filed until after my retirement from the Court. Now, after examining the dissent, I reiterate my concurrence. Because of the importance of the case I elect to set forth some additional thoughts, primarily in response to the dissent.

A tenured teacher's position is a valuable asset, which should be divested only on sound substantive grounds consistent with the governing statutes and in accord with the prescribed procedure, designed to afford due process of law. The school authorities, nevertheless, must be able to evaluate teachers and to eliminate those who, after being given the opportunity, fail to perform according to the standards.

*Section 168.116.2* deals with claims of "incompetency, inefficiency or insubordination in the line of duty...." on the part of a tenured teacher. The claim of "insubordination in the line of duty" is one which should be capable of very precise statement. But there is no charge of insubordination here. The items complained of in the January 31, 1990 letter seem to fall into the statutory categories of "incompetency" or "inefficiency," which are much more difficult to describe with exactitude.

I agree with the principal opinion that the documentary record and the history of remedial efforts prior to January 31, 1990 may be looked to in determining whether the statutory warning notice was adequate. It is entirely appropriate for the school authorities to give informal warnings in the hope of remedial action, in advance of the formal statutory warning. It might be preferable to refer to previous reports and meetings in the statutory warning, but it would be unreasonable to assume that the

teacher was ignorant of what had gone on before.

The teacher, moreover, may properly be expected to raise questions of inadequacy of the warning letter, if she believes that further details are necessary. The warning letter is a remedial step, designed for improvement and correction. The superintendent and the teacher are directed to "meet and confer," with the superintendent authorized to designate representatives for meetings and conferences. The record shows that the parties did meet and confer. The teacher should not engage in sandbagging tactics, by participating in the meetings and counseling sessions but then claiming that the entire procedure was fatally flawed from the time the warning letter was issued. This teacher received very specific information both before and after the warning letter was served. I am persuaded that there was substantial compliance with the letter and the spirit of the statute.

Perhaps warning letters should contain language such as, "if you need further information about the performance deficiencies detailed above, please get in touch with the undersigned." But it is still reasonable to expect this appellant to ask for further specification, if she is in doubt.

The principal opinion attempts to reconcile and harmonize some dozen cases from the several districts of the court of appeals dealing with problems under § 168.116. I do not find these efforts either productive or helpful. I rather content myself with the observation that a warning letter should set forth the details of the complaints as explicitly as their nature will permit, that prior remedial efforts may be looked to as an aid to the interpretation of general complaints, and that participation in remedial and counseling sessions following receipt of a warning letter may effect a waiver of more detailed specification.

The dissent charges the "warehousing" of complaints, and would throw the flag so as to require that the whole procedure be run through again. The record persuades me that the school authorities dealt reasonably with the appellant teacher, over a period of many months, in attempting to help her correct numerous deficiencies which they perceived. A contrary holding would make it extremely difficult to terminate a teacher unless specific misconduct is demonstrated. The statute does not so limit the school authorities.

The decision is supported by substantial evidence on the record as a whole. Whether it is a proper decision is commended to the judgment of the Board of Education and not to the courts.

With these observations I maintain my concurrence in the principal opinion and in the judgment of affirmance.